### COMSTOCK v. HERRON et al.

### BARR v. SAME.

(Circuit Court of Appeals, Sixth Circuit. May 11, 1893.)

Nos. 74 and 75.

1. WILLS—CONSTRUCTION—LIFE ESTATES.

A will provided that specified sums should be invested, in the discretion of the trustees, and the income thereof paid to certain persons for life, and that until such investments were made the beneficiaries should be paid stated sums annually, which sums were about the equivalent of 6 per cent. upon the amounts directed to be invested. *Held,* that under the will the beneficiaries were entitled to these annuities until the investments were made, without any deduction for a deficiency in the general income of the estate.

2. SAME—ELECTION—ESTOPPEL—EVIDENCE.

The investments were not made by the trustees for several years, part of which time the annuities were paid in full, after which the trustees suggested to the beneficiaries a ratable abatement of the annuities, in order to keep within the income of the general estate. One of the beneficiaries received such ratable proportion, but declined to receipt for it except "on account." As to the other beneficiary, there was no satisfactory evidence to show that he had acquiesced in the partial payment. *Held,* that there was no election to take such partial payments as payments in full, so as to prevent a recovery of the deficiency.

3. JURISDICTION OF CIRCUIT COURT—ADMINISTRATION OF ESTATES.

The circuit court of the United States has jurisdiction, as between citizens of different states, of the administration of the assets of deceased persons, such assets being within their territorial jurisdiction; and, in a suit against a trustee under a will for an accounting and distribution, the court erred in remitting the case to the state probate court for the taking of accounts.

Appeals from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

In Equity. Bill by Nellie P. B. Comstock, a citizen of Indiana, and a beneficiary and residuary legatee under the will of Margaret R. Poor, deceased, against John W. Herron and William H. Fisher, citizens of Ohio, as trustees and executors under the will, to enforce the execution of the trusts in her favor. David McKnight Barr and Adele W. Lee, also beneficiaries and legatees, were made parties defendant; and subsequently Margaret E. Merrill, a citizen of Kentucky, William B. Finley, a citizen of Missouri, Ada D. Huston, a citizen of Kansas, and William A. Barr, a citizen of New York, also beneficiaries and residuary legatees, voluntarily entered their appearance, and were made parties. David McKnight Barr and Adele W. Lee filed crossbills, but by various stipulations and adjustments the case was finally tried on certain questions raised by the bill, with its amendments, the supplemental bill, the answer of the trustees and executors, replication thereto, and the cross bill of David McKnight Barr. For an opinion rendered on exceptions to the answer, see 45 Fed. Rep. 660. The decree of the court below denied the relief asked, and remitted complainants to the probate court of Hamilton county, Ohio, to obtain a proper accounting. From this decree, Nellie P. B. Comstock and David McKnight Barr appeal. Reversed.

Statement by SEVERENS, District Judge:

These suits, entitled as two, are in substance one case, upon the original and supplemental bills of Mrs. Comstock, the complainant in the principal suit, and the cross bill of David McKnight Barr, who was a defendant therein. The case comes here from the circuit court for the southern district of Ohio, upon the appeal of the complainants in the original and cross bills. These several bills were filed for the purpose of compelling the execution of certain trusts created in favor of the complainants, respectively, by the will of Margaret B. Poor; and the original bill of Mrs. Comstock also prayed for an accounting and distributing of the residuum of the estate, she being, not only a specific, but a residuary, legatee under the will.

Mrs. Poor died on the 18th day of August, 1882, and was at the time of her decease a resident of Hamilton county, in the state of Ohio. In her will, Mrs. Poor, after making certain specific bequests to various charities, therein mentioned, and giving to Nellie Preston Barr, now Mrs. Comstock, all her personal apparel and ornaments, her household furniture and ornaments, her household stores, and her horses and carriages, etc., by the third paragraph thereof devised and bequeathed all the residue of her estate, real, personal, and mixed, to John W. Herron and William H. Fisher, in fee simple, in trust, with full power to manage and dispose of the same as to them should seem best in the execution of the trusts created by the will.

By the fourth paragraph she directed the trustees to invest $25,000 of her estate in productive real estate, or interest-bearing securities, as to them might seem best, with power to change the investments, in their discretion, and to pay the income from that sum so invested to her brother David McKnight Barr, during his life, and that until said sum was so invested they should pay to him from the day of her death, out of her estate, at the rate of $1,500 per annum.

By the fifth paragraph she directed them to pay to Nellie Preston Barr, her niece, $10,000 in money, and to invest the sum of $56,667 in productive real estate or interest-bearing securities, at their discretion, with power to change the investments, and to pay the income therefrom stately to her, and further directed that until the $10,000 was paid, and the other sum invested for her benefit, the trustees should pay to her at the rate of $4,000 per annum from the date of the decease of the testatrix. This paragraph also directed that the amount so invested should, upon the death of the ben-

eficiary, be paid to certain persons in a certain preferred order therein stated, or, in case none of the proposed subsequent beneficiaries should be living at the death of the said Nellie P. Barr, the whole invested sum should fall into the residuary fund, and be disposed of as directed by the fourteenth paragraph.

The testatrix, in several following paragraphs, directed the investment by her trustees of various sums for the benefit of other persons therein named, with similar provision for allowances in case the investments should be postponed, and to still others she directed the payment of certain definite sums, out and out. The particulars of the several bequests other than those in favor of the complainants, it is not necessary here to state, further than to say that some of the beneficiaries were persons who, with Nellie Preston Barr, were named as residuary legatees. By the fourteenth paragraph of the will, Mrs. Poor directed that all the rest and residue of her estate should be paid over to her six nephews and nieces, therein named; Nellie Preston Barr being, as above stated, among them. Other provisions, not material to any question arising on the record, followed, and Mr. Herron and Mr. Fisher were nominated as executors of the will, without bond. The will was duly probated in the probate court for Hamilton county. The executors therein named were confirmed, and they accepted the trusts imposed by the will, as executors and trustees.

The total value of the estate was about the sum of $232,000, some four-fifths of which was productive. Some of the rest consisted of unproductive real estate The sum of $10,000 was duly paid by the trustees to the complainant Mrs. Comstock as directed by the fifth paragraph of the will, and no question arises upon that provision. It also appears that the several investments directed by the will have, since the commencement of this suit, been made, as of January 1, 1891, to the satisfaction of the parties, and by their consent those investments were confirmed by the decree in the court below.

In the course of the management and settlement of the estate, it was for some time found practicable by the trustees to meet the accruing charges upon it from funds coming to them as income from the productive portions, and from the disposition of portions which they could convert into money without prejudice to the estate. The investments for Mrs. Comstock, David McKnight Barr, and the others were not yet made; but the annuities due to them under the will were fully paid until January 1, 1887. Shortly before this time the trustees, finding that the income from the estate, and the proceeds of such portions as they had thought it judicious to sell, did not provide a sufficient fund for the purpose of meeting the charges against the estate, including the annuities above mentioned, addressed a communication, written by Mr. Herron, who seems to have had the principal active charge and management of the trust, to Mrs. Comstock, who had married, and was living out of the state of Ohio, being then at Detroit, in which Mr. Herron, after reciting the reasons for the shrinkage of income from the estate, stated that in consequence of this the amount of the income for the last two years would not pay the annuities, and that he saw no other way than to make a pro rata diminution in order to keep the estate together until certain unproductive property could be sold. He suggested to her that if the trustees made the investments the beneficiaries would not get more than five-sixths of what they had been receiving; that 5 per cent. was a fair rate of interest; and that he thought the whole property should be kept together, and the income divided; but, if "the heirs" thought better, he would divide it into shares. In reply to this, Mrs. Comstock said that she was greatly distressed at the condition reported by Mr. Herron, and, after making certain inquiries of him in regard to matters affecting the estate, said that, for one, she was in favor of keeping the estate together, and added that it seemed to her that, by the terms of the will, the first thing to be accomplished was the payment of the annuities. No answer appears to have been made to this letter, but about two months later Mr. Herron again wrote to Mrs. Comstock, stating that he desired to explain that the next year (1887) there must be a diminution of her income, but exactly how much he could not tell her; that there would be a deficiency of income for the then current year, which he had paid out of the principal,

but which he "must pay back;" and that the income would nearly, if not quite, pay the next year's annuity, (presumably, if none were taken to replace principal.) In January, 1887, Mr. Herron again wrote that for the present year he was unable "to pay more than 5 per cent. on the sums given to each heir by the will;" that this would reduce her allowance; but that he thought that after that year he could return to the old rate.

No further correspondence, directly bearing on this subject, appears, and there is no other evidence of a more specific nature. But it is shown that Mrs. Comstock was paid only $2,833.35 per annum from January 1, 1887, to the date of the investment, which was January 1, 1891. A fact of much importance in the solution of the questions presented for decision is that Mr. Herron was himself a counselor at law, of large experience and high standing, and, no doubt deservedly, had the confidence, not only of the testatrix, but also of all who were interested in the estate. It was very probably because of these qualities that he was constituted a trustee, and afterwards accorded the management. Up to January 1, 1887, and perhaps for one or two months later, she receipted in full for her annuity, but after that she receipted for the sums paid her as "received on account of income." It appears that after the payment of the $10,000, which was in 1882, Mrs. Comstock only received $3,400 per annum; the parties seeming to have adopted the, construction of the provision in the will to require that upon the payment of the $10,000 the allowance should be reduced in the proportion of that sum to the whole amount of both provisions made for her, i. e. $67,667, —a construction very equitable to the estate. She does not, in this suit, claim any more than at the rate of $3,400 per annum; but she demands the difference between that sum and the $2,833.35 which has been paid her, or $566.65 for each of the four years during which she has received the diminished allowance.

As to David McKnight Barr, there is evidence in the record from which it appears that the trustees made a similar suggestion to him, when the estate became short of available funds, and that in fact his annuity was reduced during the same period from $1,500 to $1,200 per annum. Without going into a detail of the evidence on this point, it is sufficient to say that it presents the question whether he assented to the proposition of the trustees under circumstances which conclude him. By his cross bill the complainant therein sought to compel the trustees to pay him the deficiency of $300 per annum for the four years during which it was withheld.

The defense to both the original and cross bills was the same, namely, that the complainants therein had assented to and acquiesced in a course of proceeding on the part of the trustees whereby they had forborne to make the investments for them under the will in consideration that they would take the diminished allowance during the time of such forbearance, and that they are thereby estopped from now demanding the deficiency.

The court below sustained this defense, and denied the relief sought in respect to the unpaid annuities, and also denied the accounting prayed for by the original complainant, Mrs. Comstock, whereon to obtain the distribution of the residuary estate. The parties were remitted by the decree to the probate court for Hamilton county to obtain the proper accounting, and it was ordered and adjudged that thereupon the trustees distribute the amount there ascertained in proportions fixed by the decree. Other ordering parts of the decree are not involved in this appeal. Both original and cross complainants appeal from so much of the decree as denies to them, upon the grounds of estoppel, the relief sought in respect to the unpaid portions of their annuities; and Mrs. Comstock appeals, also, from that part of the decree which denies her an accounting in that court, and remits her to the probate court for Hamilton county for that purpose.

Harlan Cleveland, (C. B. Matthews, of counsel,) for appellants.

John W. Herron, Lewis N. Gatch, and William C. Herron, for appellees.

Before JACKSON, Circuit Judge, and BARR and SEVERENS, District Judges.

SEVERENS, District Judge, (after stating the facts.) Upon the foregoing facts, as gathered by us from the pleadings and proofs, we think that there is error in the decree, in both particulars complained of. It is clear that, upon a proper construction of Mrs. Poor's will, the annuities which the trustees were required to pay to Mrs. Comstock and to David M. Barr until the permanent investments should be made for each of them were specific charges upon the estate itself, the whole fund, in the hands of the trustees. The beneficiaries were not restricted to the income of the estate as the source from which their annuities should be paid, as the trustees seem to have practically assumed in dealing with the beneficiaries in the execution of the trust. The annuities were in no sense dependent on income, and had no specific relation to it. It may be that the trustees, in providing for the satisfaction of the charges, might find it expedient to appropriate income for that purpose, but it was not the measure of the rights of the cestuis que trust.

It is sufficiently shown, as matter of fact, that at the beginning of the year 1887 the income realized by the trustees from the estate was insufficient to pay the accruing charges upon it, and that, finding the estate in that predicament, they suggested to the persons interested in the trust that, in order to keep the disbursements within the limits of the income, it would be necessary to diminish the current annuities, and that this diminution was continued for the period of four years from January 1st of that year, at the expiration of which time the permanent investments were made. It is now claimed that the diminution of the annuities and the postponement of the investments was with the assent of the annuitants, and that the circumstances were such as to preclude them from any right to assert a claim for the unpaid portion, upon the ground that they are estopped by their acquiescence and election. We have stated the defense in rather more specific terms than it is presented by the answer, and have given that defense the benefit of all the inferences which have been drawn from the allegations of the pleading on the argument.

Certain well-settled rules, recognized by courts of equity, are applicable to the solution of the question whether, in such circumstances as are exhibited by the record, such an estoppel has in fact been established.

One of those principles is that when it is sought to preclude a party from the assertion of what would otherwise be a clear legal right, upon the ground that he has elected an inconsistent right, there must have been some definite agreement, in the nature of an express contract, or some line of conduct, purposely taken, from which such definite agreement may be fairly and reasonably implied. The substantial elements of a legal contract must be found in the circumstances. Jorden v. Money, 5 H. L. Cas. 185. The question in that case was whether a party was concluded by the representation of her intention to relinquish a right, upon which representation others had so proceeded that their steps could not be retraced. It was held that there was no estoppel in such a case, for that, in order to be binding, the representation must amount

to a promise upon a consideration; that is to say, to a contract. Lord St. Leonards dissented from the majority, principally, as it would seem from an attentive reading of his opinion, upon his view of the facts, which he thought constituted a contract. In Maddison v. Alderson, L. R. 8 App. Cas. 473, Lord Chancellor Selborne said that he understood the law to have been so determined in Jorden v. Money.

That this is the basis of the estoppel in such cases is assumed in Wheeler v. Smith, 9 How. 55. In that case a testator had devised property to trustees upon a trust which the court held invalid. The heir at law, a young man, expressed to the trustees his conviction that the devise was void, and stated his determination to test its validity. He was dissuaded by the trustees, one of whom was a distinguished lawyer, and, in deference to their opinion that the devise was valid, consented to waive his right to the property, and take a sum of money instead. The court held that he was not bound by the compromise, and said:

"It appears to us that the agreement under such circumstances is void. It cannot be sustained on principles which lie at the foundation of a valid contract. The influences operating upon the mind of the complainant induced him to sacrifice his interests. He did not act freely, and with a proper understanding of his rights."

Among the elements of a contract is the certainty of the thing agreed upon. It is proper to observe, in passing, that the present case is not strictly one of "election," as that term has been used in equity to define the choice of rights, one of which is already possessed, and another, inconsistent one is tendered by the donor; but the term is here employed in a wider sense, to indicate the choice of inconsistent rights or benefits, without regard to the peculiar manner of their origin. However, the rules applicable are analogous.

We are unable to find sufficient evidence in this case of any agreement, on the part of either Mrs. Comstock or Mr. Barr, having any defined scope and limits. In the first letter of Mr. Herron to Mrs. Comstock, in which he lays the foundation of the supposed election by her, he does not state the amount of the reduction he proposes. All that he says, bearing upon the subject, is that "five per cent. is regarded as a good rate to receive from property," and in a later letter he writes to her that he desires "to explain that next year (1887) there must be a diminution of your income, but exactly how much I cannot tell you." This, as he further explains, was because he had taken from the principal to pay the annuities for 1886, but which he "must pay back." Up to January 1, 1887, there had been nothing more definite than this in regard to the amount of the proposed reduction. Later on, in January of that year, he wrote her that he was "unable, for the present year, to pay more than five per cent. on the sums given to each heir by the will." There is no evidence, oral or written, tending to show Mrs. Comstock's assent to this as a full payment of the amount due her. On the 18th of March following, she wrote him in regard to a receipt to be signed by her for money which he had sent, and said:

"Your receipt reads $236.11, being one month's payment due from the estate of said deceased; and, as I understand the will, we were entitled to six per cent. on the sum devised to us until a certain amount of property is set aside to each heir. Am I correct in this? Of course, I understand that you cannot pay 6 per cent. this year, but in case you should be taken away, and the trustees appointed by the court, I should not want them to find my receipt for $236.11 as being one month's payment of the sum devised me."

The reasonable interpretation of this letter would seem to be that she did not wish to give receipts in full because she did not intend to take whatever sum the trustees could then conveniently pay as final satisfaction of her claim. It is difficult to see how, in the face of this letter, the trustees could have understood that anything in the nature of an agreement to take any definite sum had been intended by her.

The evidence is equally indefinite in regard to the time during which the proposed reduction was to continue. It would rather seem that it was expected to continue for one year only, but this is the only basis afforded by the evidence for an assumption that there was an election to take the reduced amount for four years. Upon the whole, without going into further particulars, the impression produced upon our minds by the testimony on that subject is that Mrs. Comstock did not assent to anything in the nature of a contract, nor take a course of conduct from which it could be reasonably implied that she was party to an agreement with the trustees, surrendering her right, nor intentionally lead them to do what they otherwise would not have done.

In regard to the case of David M. Barr, there is a similar indefiniteness in the terms of the supposed agreement. The evidence fails to satisfy us that he assented to any certain proposition. We rather infer from it that he took what the trustees felt that they were justified, by the condition of the estate, in paying him, simply because he could not get more without resorting to compulsory measures, and expected to be reimbursed when the estate should come into better condition for doing it. It is true, one of the trustees testifies, in a general way, that all the heirs, including David McKnight Barr, assented to him, in positive terms, to the arrangement proposed by his letter to Mrs. Comstock. It would have been more satisfactory if he had given the particulars of his communications, and the replies upon which his conclusions are founded. Mr. Barr goes more into detail, and denies that he at any time acquiesced in partial payment of his allowance. The burden of proof was upon the trustees to show some binding agreement, or a distinct acquiescence in a course of proceeding which would be equivalent thereto, and there would result an injury to others if the agreement or assent were revoked, and we do not think it is sustained.

From Mrs. Comstock's letter of January 18, 1887, it is seen that while she indicates her understanding that, until the investments were made, she was entitled to the full amount of the annuity, she appeals to the trustees to inform her about this. The trustees persistently went on, upon the theory that the annuities were payable out of income only, and were dependent thereon. Correct informa-

tion was due to her, and in order to preclude her by election it should appear that she acted upon knowledge of her rights. 1 Lead. Cas. Eq. (3d Amer. Ed.) p. 419, where it is said in the notes by Hare & Wallace that an election can only be determined "by plain and unequivocal acts, under a full knowledge of all the circumstances and of the parties' rights; and a bare acquiescence, without a deliberate and intelligent choice, will not be an election." Story, Eq. Jur. § 1097; Snell, Eq. (2d Eng. Ed.) 186; Wheeler v. Smith, 9 How. 55; Bennett v. Colley, 2 Mylne & K. 225; Macknet, v. Macknet, 29 N. J. Eq. 54, and cases cited; Davis v. Bagley, 40 Ga. 181.

If, therefore, we could see that she did in fact make an election, we would still be compelled to hold that she did so under moral pressure, and in deference to the superior judgment of the trustees as to what her rights were, and, further, that they were mistaken in that judgment.

The rule which requires clear proof to warrant the conclusion of a waiver of a substantial right is especially applicable to those holding fiduciary relations. When a trustee, holding a position of power and influence over the cestui que trust, sets up against that party, for the benefit of others, an estoppel precluding the assertion of a right created by the trust, and that estoppel is founded upon a transaction between the beneficiary and himself, he must be expected to produce quite satisfactory proof that the party proposed to be estopped came freely, and with full understanding of his rights, into some inconsistent arrangement, of tangible form and certainty. Nothing less than this should satisfy the court. Wheeler v. Smith, 9 How. 55; Lloyd v. Attwood, 3 De Gex & J. 614, (judgment of Lord Justice Turner;) Aspland v. Watte, 20 Beav. 474; Walker v. Symonds, 3 Swanst. 1. While the general rule is, undoubtedly, that mere mistake of law in regard to one's legal rights will not constitute ground for relief, yet the rule is otherwise if such mistake is the result of influence exercised by one occupying a fiduciary relation of superiority, no matter with what motives applied.

In the present case the defense is in the interest of the residuary legatees, whose fund will be increased at the expense of those having a paramount claim upon it. It is rightly said by the trustees, in their brief, that they have themselves no interest to subserve by it. But to sustain the defense the parties whom it would benefit must claim through the transaction of the trustees, and are affected by its qualities. There was no wrong actually intended by the trustees. But we think it is a mistake to suppose that what took place between them and the present complainants amounted to a surrender of the rights of the latter under the will, and an estoppel against their assertion in the present suit. The fund remains undistributed, and subject to the power of the court. Whether other considerations might have been potential if the fund had gone beyond reach, it is not necessary to inquire. The situation is such that equity can be done without injury to any one. Mills v.

Drewitt, 20 Beav. 632; In re Ashwell's Will, 1 Johns. Eng. Ch. 112; Snow v. Booth, 2 Kay & J. 132. We are fully persuaded that the trustees have not in fact pursued any substantially different course with regard to the estate from that which they would and should have taken if the transactions with the cestuis que trust which occurred had not taken place at all.

In respect to the other ground of appeal, we think the court below, having complete jurisdiction of the subject-matter and of the parties, should not have referred the parties to another tribunal, over which it had no control or supervisory power, for an accounting, but should have ordered this to proceed under its own authority. When the judicial powers of the circuit courts of the United States, in equity, were originally granted, their jurisdiction was extended over the general subjects of equity jurisprudence upon which the court of chancery in England was accustomed to exercise its powers. One of those subjects was the administration of the estates of deceased persons. Owing to the limited nature of the powers of the ecclesiastical courts, it was necessary, especially where property was charged and limited by trusts, to apply to the court of chancery, which, by the amplitude of its faculties for adjudication and relief, was competent to determine such matters, and afford the proper remedy. 1 Story Eq. Jur. § 532 et seq.

This jurisdiction of the circuit courts in equity remains unaltered, so far as the present subject is concerned. The states of the Union have, by their constitutions and statutes, distributed their own judicial power. But that distribution does not and cannot impair the general equity jurisdiction of the circuit courts of the United States to administer, as between citizens of different states, the assets of a deceased person, those assets being also within their territorial jurisdiction. Green's Adm'x v. Creighton, 23 How. 90; Payne v. Hook, 7 Wall. 425; Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. Rep. 440; Hayes v. Pratt, 147 U. S. 557, 13 Sup. Ct. Rep. 503.

No doubt the probate court of Hamilton county has, as have the probate courts generally in the several states, much larger powers than the ecclesiastical courts of England had. It has the exclusive power of admitting wills to probate, and of appointing executors thereof, and of appointing administrators of intestate estates. In such proceedings the federal courts are without authority. Fouvergne v. New Orleans, 18 How. 470; Broderick's Will, 21 Wall. 503.

But in addition to this the probate court is intrusted with some —not all—of the general powers and duties of courts of equity. Whenever, in the exercise of this concurrent jurisdiction, the probate court has adjudicated upon a matter within the scope of its authority, such effect will be given in the courts of the United States to that judgment as by the law of the state it is entitled to. So far as validity and conclusiveness are given to it by state law, it will be recognized by the latter courts, and given effect, upon the same general principles as other judgments lawfully

rendered, and subject to the same limitations. Caujolle v. Ferrie, 13 Wall. 465; Veach v. Rice, 131 U. S. 293, 9 Sup. Ct. Rep. 730; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. Rep. 369.

There is no actual possession of the fund by the probate court. That court has simply certain powers of adjudication which may affect it.

The complainant Mrs. Comstock is entitled to an accounting in the court below. Whatever is shown to be concluded by judgment in the probate court will be so treated, to the extent that such judgment is conclusive by the laws of Ohio. Subject to any such adjudication, the complainant is entitled to have the matters involved adjudicated by the court whose jurisdiction she has invoked. It is said in the brief for the trustees, and urged upon the argument, that there is really no controversy about the accounts, and that the taking them would involve useless expense. If this be so, the parties may, by stipulation in the circuit court, dispense with the reference, in whole or in part.

We think that an accounting should be ordered in the court below; that the trustees should be decreed to pay out of the trust funds to the complainants in the original and cross bills, respectively, the unpaid portions of the so-called annuities for the four years succeeding January 1, 1887, as claimed by them in the said original and cross bills; and that the residuary estate, when ascertained, should be distributed to those entitled.

The decree must be reversed, and the cause remanded, with directions to proceed therein in conformity with this opinion.

JACKSON, Circuit Judge, sat upon the hearing of this case, and participated in the conference thereon, and concurred in the propositions upon which the decision is rested, but was not a member of the court when its opinion was announced.