JOHN W. OVERTURF, ADM'R OF THOMAS DUGAN, *v.* JAMES DUGAN ET AL.

1. The lands of an intestate descend at once to his heir, and the legal title vests in him, subject to the right of the administrator to sell the same for the payment of the debts of the intestate, in the manner prescribed by law.

2. The rents of the lands of an insolvent intestate, accruing between the death of the intestate and a sale of the lands for the payment of debts by the administrator, belong to the heir and not to the administrator.

MOTION for leave to file petition in error to reverse the judgment of the District Court of Scioto county.

The facts necessary to an understanding of the controversy in this case are as follows:

Thomas Dugan died intestate on the 18th of November, 1873, leaving two children, James and Fannie (the latter intermarried with James Adams), his only heirs, and a widow, Lavina, since intermarried to Elias Ware. The plaintiff in error was appointed his administrator on the 24th of November, 1873.

The entire estate of the deceased amounted in the aggregate to about $280,000, of which amount $175,000 was real estate. On the death of the intestate the real estate passed into the possession of the widow and heirs above named, who are still in possession of the same. The liabilities of Dugan at the time of his death amounted to about $380,000, a large amount of which was secured by mortgages on the real estate of the deceased, but none of the mortgagees have commenced proceedings to enforce their mortgages. The administrator caused an inventory and appraisement of the estate to be made and returned, and immediately thereafter instituted proceedings in the court of common pleas of Scioto county, against the widow, heirs, mortgagees and all others interested, to obtain an order to sell all the real estate of which Dugan died seized for the payment of his

debts; and at the March term, 1874, of the court, the prayer of the petition was granted, and the administrator ordered to sell all the real estate accordingly; but only a very small portion thereof had been sold at the time this action was commenced. On the 14th of May, 1874, on a proper showing, the probate court declared the estate probably insolvent.

The rents for the current year, i. e., from March 1, 1874, to March 1, 1875, amount to about $10,000, of which sum $800 had been collected by the widow and heirs at the time this action was commenced. On the 10th of November, 1874, the administrator filed his petition in this case in the court of common pleas, making the widow and heirs, and also the tenants living on the real estate, parties, and asking that the widow and heirs " may be enjoined from collecting said rents arising from said real estate, or interfering with or making sale of said crops, and that they may be required to repay to this plaintiff the rents already received and proceeds of crops sold by them." Also asking that the tenants on the land " may be enjoined from paying any rents or the proceeds of said crops now in their possession " to the widow and heirs.

The widow and heirs for themselves, and in behalf of the tenants, answered, denying the administrator's right to the rents, and claiming that they are lawfully entitled to collect and retain the same as their own by virtue of their title and possession. In the court of common pleas a decree was rendered in favor of the plaintiff, granting the injunctions prayed for, and ordering all the rents to be paid to the administrator.

On appeal the district court rendered a decree in favor of the defendants, dissolving the injunctions, and affirmatively finding and decreeing that the heirs were entitled to collect and receive the rents, subject to the rights of the widow, and authorizing them to collect the same, whether they were such as had accrued before the action was commenced or such as might accrue thereafter, and before a sale of the real

·estate by the administrator.   By this proceeding the re·
·versal of the decree of the district court is sought.

*W. A. Hutchins* for the motion.

The whole theory of our administration law is, that
upon a man's death his property (subject to the rights of
his widow) go first to the payment of his debts, and the
heir takes simply what remains.   1 S. & C. 576, secs. 3, 57 ;
Ib. 572, sec. 29 ; Ib. 587, sec. 113 ; Ib. 586, sec. 103 ; Ib. 610,
·sec. 228.   And, on the same subject, see *Sheldon* v. *Newton*,
3 Ohio St. 504;  *Ramsdall* v. *Craighill*, 9 Ohio, 197 ;  *Stiver*
v. *Stiver*, 8 Ohio, 221 ; *Spicer* v. *Giselman*, 15 Ohio, 341 ;
*Turpin* v. *Turpin*, 16 Ohio St. 270.

It is not the *proceeds* of the real estate that is assets in
the hands of the administrator for the payment of debts,
but the *real estate itself*, from the time the proper action is
taken setting up that right.   It is assets in his hands as
trustee for the creditors, and the right of the heir is sub-
·ordinate to this prior equity.

If this be so, why are not accrued rents subject to the
same equity ?   Before the death of the intestate, his credi-
tors could, by showing that his property, subject to execu-
tion, was insufficient to pay his claim, appropriate accrued
rents due from others.   Can it be claimed that the heir has
·any greater right than the intestate would have if he were
living ?

*Moore & Newman* contra.

The real estate of an intestate descends at once to his
legal heirs, and the legal title is vested in them, subject
only to the right of the administrator, under the order of
the proper court, to *sell* so much of it, after the personal
estate has been exhausted, as is necessary to satisfy the
debts of the intestate.   *Pratt* v. *St. Clair*, 6 Ohio, 227 ;
*Stiver* v. *Stiver*, 8 Ohio, 220 ; *Ramsdall* v. *Craighill*, 9 Ohio,
198; *Douglas* v. *Massie*, 16 Ohio, 273 ; *Sheldon* v. *Newton*,
3 Ohio St. 504; *Gill* v. *Penny's Adm'r*, 12 Ohio St. 46; 3

Redfield on Wills, 134, and notes; Perry on Trusts, sec. 765; Hill on Trustees, 236; *Welch* v. *Perkins*, 8 Ohio, 59.

The right and title of an administrator in and to the property and estate of an intestate are given him by legislative enactment. He is solely the creature of the law. He has no right or title in the real estate of the intestate, unless it be *necessary* to sell it to pay debts, and not even then till the *power* is given him by the proper court.

The legal title being in the heirs, as we have seen, until divested of it by the exercise of this *power* to sell by the administrator, they, the heirs, are entitled to the possession and control of the realty, and, as a necessary consequence, they are entitled to enjoy the rents and profits. *Pratt* v. *St. Clair*, 6 Ohio, 227; *Gray* v. *Hawkins*, 8 Ohio St. 455; 3 Redfield on Wills, 127, 134, and note; Perry on Trusts, sec. 765; Hill on Trustees, 236; *Welch* v. *Perkins*, 8 Ohio, 59; 12 Ohio, 95; 10 Ohio St. 126; 15 Ohio St. 354; 14 Ohio, 346.

GILMORE, J.    There is no controversy as to the facts in the case; they are admitted to be as stated in the pleadings.

The intestate having died in the month of November, 1873, there is no question made as to the right of the administrator to take, as assets, the emblements or crops growing upon the lands for the then current year, viz.: from March 1, 1873, to March 1, 1874.

But the real estate of the intestate not having been sold, the controversy relates to the accruing rents for the succeeding year, *i. e.* from March 1, 1874, to March 1, 1875.

On the part of the administrator, it is claimed that on the admitted facts in the case, he, as trustee for the creditors, is entitled to these rents. On the other hand, the heirs claim that, being the owners and in possession of the lands, they are entitled to these rents in their own right, subject to the widow's interest therein.

Upon the facts admitted, which of these respective claims will the law recognize as valid?

1. By an unbroken line of decisions in our state it is conclusively settled: That the real estate of an intestate descends at once to his legal heirs ; and the legal title is vested in them, subject only to the right of the administrator to sell the same for the payment of the debts, in the manner prescribed by law.

From this it is at once apparent that the administrator of an intestate has no interest whatever in the lands of which his intestate died seized, except the right of sale for the purpose specified.   Not having the title, he can not, in the absence of statutory authority, take possession of the lands, and no such authority is given to him.   The only power over the lands with which he is clothed is a power to sell the same to pay the debts of his intestate, and this power can only be exercised and executed under the sanction of a court of competent jurisdiction, in pursuance of statutory authority, and a sale of his intestate's lands, made without such sanction, would be void.   The special case provided for by the 120th section of the administration law (S. & C. 590) forms no exception to the general rule, for there the intestate having transferred his land to defraud his creditors, the title could not descend to his heirs.   It is the proceeds of the sale of the land alone, and not the land itself, that the administrator can take as against the heirs to whom the land descended.

2. The title to the real estate, which the heir takes by descent, entitles him to the possession of his ancestor ; and this draws to it the right to receive, as against the administrator, the rents and profits of the land (emblements excepted) during the continuance of his possession, which may be from the death of the ancestor until the actual sale of the land by the administrator for the payment of the debts of his intestate.

The above propositions are perfectly consistent with the decisions of this court in reference to the debts of the intestate being a charge or lien on the land ; and that this charge or lien is paramount to the rights of the heir at law,

and that it can only be removed by the payment of the debts, or by the lapse of time. *Stiver* v. *Stiver*, 8 Ohio, 221; *Ramsdall* v. *Craighill*, 9 Ohio, 197; *Sheldon* v. *Newton*, 3 Ohio St. 504.

This charge or lien is a legal incident to the ownership of the intestate, and operates in favor of his creditors and for their security. The administrator has no power over this lien or charge; he can not by his individual act either release the land from it in favor of the heir, or enlarge its operations in favor of the creditors of the estate. As has been said, he can only obtain the proceeds of the land by an authorized sale.

Neither the filing of the petition to sell the lands, before the rents in question commenced accruing; nor the order of sale granted by the court shortly after they began to accrue; nor the declaring of the estate probably insolvent by the proper court, had the effect of enlarging the rights of the administrator in reference to the accruing rents. The heirs were still legally in possession as owners of the land, and entitled to the rents; and as has been said, the lien in favor of the creditors was upon the land itself, and not upon the rents accruing during the time intervening between the death of the intestate and the sale by the administrator. Rents thus accruing are not and can not be said to be assets belonging to the administrator of the intestate's estate, for they were not in existence at his death, and the creditors of the intestate can not claim them for the payment of his debts, for they never belonged to him. They therefore must belong to the owners of the land who are the widow and heirs.

The fact that an administrator may be ordered by the court to include in the inventory and appraisement, the real estate of the intestate, as provided in sections 3 and 29 of the administration act (S. & C. 567, 572) does not affect the question. The object of this legislation was not to enlarge the powers of the administrator over the real estate, but to put the court in possession of the information, with a view

of enabling it to more intelligently discharge its duties in supervising the conduct of the administrator.

Sections 57 and 113 of the act (S. & C. 576, 587) require the administrator to account for after-acquired assets ; but the rents of the real estate that descended to the heirs, accruing after the descent was cast, not being assets of the estate, these sections impose no duties upon the administrator in reference to them.

The lands in question were all incumbered by mortgages executed by the intestate, the conditions of which respectively were broken at the time of his death. None of the mortgagees had commenced proceedings in foreclosure, or asked the appointment of a receiver to take charge of the lands and rents. Other debts to large amounts are unsecured.

The plaintiff in error claims that: "Upon general equity principles an administrator who stands as trustee for creditors may come into court for instructions without reference to the statute, and from his showing, if it appears that the estate is insolvent, and that the naked land with the other assets will not pay the debts, the accruing rents can be appropriated for this purpose."

There are no authorities cited in support of this proposition. While it may be conceded that the mortgagees, or any of them, might go into a court of equity and assert their rights under their mortgages, after condition broken, and have a receiver appointed to take charge of the lands and collect accruing rents for their benefit, yet the right to this relief would rest upon the fact that they were the owners of the legal title, but not having the right to the possession under our present practice, equity would give them that which is usually an incident to possession—that is, the rents and profits until foreclosure and sale. But general creditors would have no such equitable right by reason of the fact that their debts are a charge or lien upon the lands of the intestate in the hands of the heirs. They can not proceed directly against the lands. Their rights

must be wrought out through the administrator, and, as we have seen, his rights, powers, and duties are all strictly statutory, and no statute exists giving the administrator a right to go into a court of equity and compel the heirs to give up rents that legally belong to them, for the benefit of the creditors of their ancestor.

*Motion overruled.*