HERRON et al. v. COMSTOCK.

(Circuit Court of Appeals, Sixth Circuit. July 20, 1905.)

No. 1,378.

1. FEDERAL COURTS—JURISDICTION—APPEAL—LAWFUL CASE.

Where, in a suit against trustees for an accounting in the federal courts, the Circuit Court of Appeals sustained certain assignments of error, and remanded the cause with directions to enter a decree for complainant for the balance of certain annuities, and to require the trus-

tees to account for the residue of the estate remaining in their hands subject to distribution under the provisions of a paragraph of the will, and when such residue should be ascertained to distribute it to those entitled thereto, the court having jurisdiction of the cause and of the parties, such decree was binding on them, and precluded them from subsequently objecting that the order directing the accounting constituted an infringement of the jurisdiction of the probate court of the state in which the settlement of the estate was pending.

2. SAME.

Where the powers and duties of executors and trustees under a will were severable, and, prior to the filing of a bill in the federal court by a beneficiary under the trust, the administration of the personal estate by the executors had ended, and nothing remained but the management and disposition of the trust real estate remaining unsold for the completion of the trust, the federal court had jurisdiction to decree an accounting by the trustees and direct final distribution and settlement of the trust.

3. SAME—STATE STATUTES—CONSTRUCTION.

Ohio Rev. St. 1892, § 6328, provides that any trustee under any last will, or appointed by competent authority as often as once in two years, shall render an account to the probate court of the county in which he was appointed, etc., provided that the section shall not apply in any case in which the will creating the trust designates any other tribunal for the settlement of the trust, or in which any other tribunal shall have acquired jurisdiction. *Held* that, though such section was applicable to a trust in real property, it did not confer on the probate court control over the property itself, but only authority to biennially settle the trustees' accounts.

4. SAME.

Such jurisdiction did not attach where the subject-matter of the trust had been drawn into the possession and control of a federal court by the filing of a bill for settlement and distribution by one of the beneficiaries of the trust.

5. SAME—COMPENSATION OF TRUSTEES—PROBATE ORDERS—EFFECT.

Where a federal court had taken jurisdiction of the settlement and distribution of a trust in a suit by a beneficiary, it also acquired jurisdiction to fix the compensation of the trustees, and was therefore not bound by intervening orders of the probate court of the state in which administration or the will creating the trust had been granted, fixing such compensation.

6. SAME—EXTRA COMPENSATION.

Where the total amount passing through the hands of executors and trustees was $229,211.49, and the total amount obtained by the trustees for services, including the last amount, was $17,619.19, or nearly three times the statutory commissions, it was not error for the court to refuse to allow a further sum of $2,500 as extra compensation.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

W. C. Herron, for appellants.

Harlan Cleveland, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. Margaret R. Poor, a resident of Cincinnati, Ohio, died August 18, 1882, leaving a will, made in March preceding, and a considerable estate, consisting of both real and personal property. John W. Herron and William H. Fisher

were therein appointed executors. On September 7, 1882, the will was duly admitted to probate in the probate court of Hamilton county, Ohio, and on September 25, 1882, letters testamentary were issued to them. The appointment was accepted, and they qualified as executors.

In view of the questions raised on this appeal, it seems necessary to state with some particularity several provisions of this will. By the first and second paragraphs the testatrix gave certain legacies to the persons therein named, and then by the third paragraph devised and bequeathed all the rest and residue of her estate, real, personal, and mixed, which she owned or had any interest in, to John W. Herron and William H. Fisher, and to the survivor of them, absolutely and in fee simple, in trust, to sell, dispose of, and convey all such as was not in ready money, and to lease, repurchase, and reconvey, and do all other things in reference to the same as to them might seem best for the purposes of the trust. And in several succeeding paragraphs she directed the trustees to invest certain several named sums in productive real estate, or stocks or bonds, for the benefit of the several persons therein named, who were to receive the income thereof, and among whom was the complainant in this bill. In reference to her, in paragraph 5, she gave the following direction:

"I do further will and direct that said trustees pay to my niece, Nellie Preston Barr, ten thousand dollars in money, and that they invest the further sum of fifty-six thousand six hundred and sixty-seven dollars in productive real estate, bonds and mortgages, or interest-bearing stocks or bonds, at their discretion, with full power to change the said investments or any of them as they may think best; and to pay the income therefrom stately to my said niece, Nellie Preston Barr; and I further direct that until said sum of ten thousand dollars is paid to my said niece, and said additional sum invested for her benefit, as in this article directed, my trustees pay to her at the rate of four thousand dollars per annum, from the date of my decease."

To still other persons the testatrix directed her trustees to pay out and out certain specified sums. Then, in paragraph 14, she gave this further direction:

"I further will and direct that said trustees pay over and transfer all the rest and residue of my estate not herein devised, and all shares thereof at the termination of the estate for which it is devised, and all shares which from any cause shall fail to pass out of the possession of said trustees under any of the provisions of this will, to my six nephews and nieces, Nellie Preston Barr, William Alexander Barr, Mary E. Williamson, Margaret E. Merrill, Ada G. Huston and William B. Finley, to be equally divided between them."

Finally, she appointed and directed as follows:

"I hereby appoint John W. Herron and William H. Fisher executors of this will, and I direct that no bond be required of them, either as such executors or as trustees under any of the clauses of this will."

The trustees accepted the trust.

The property left by the testatrix, not specifically disposed of by her will, consisted in part of stocks and bonds, but in far larger part of real estate in and about the city of Cincinnati. The executors proceeded to perform the duties imposed upon them by the will.

The debts and legacies not included in the trust were paid by them, and the legacies payable out and out included in the trust were also paid by the same persons, in what capacity is a subject to be considered later. The personal property was all exhausted in the payment of the debts and legacies, and some of the rents, as well as some of the proceeds of sales of real estate, as we understand, were required and used for the same purpose. All this had been done as early as 1885. Thereupon steps were gradually taken by the trustees for effecting the investments directed by the will as above stated. In course of time the annuities, which by the will were to be paid to the beneficiaries until the investments were perfected, were not paid in full, for the reason, as claimed by the trustees, that the receipts of income from the trust property were insufficient. The investment which the will directed to be made for the complainant not having been made, and her annuities having fallen in arrear, she filed this bill in the court below on December 24, 1890, setting forth the facts substantially as above stated, and praying that the trustees be required to make the investments as directed by the will, that they be required to pay her the arrearages of the $4,000 annuity, and that they make report of their proceedings in execution of their trust, and render an account showing the amount remaining for distribution after payment of all the sums directed to be paid by the paragraphs of the will preceding the fourteenth, above set forth, and that, when the residue should be ascertained, the trustees should be decreed to pay over to her the distributive share to which she was entitled, and for general relief. On January 21, 1891, the trustees filed their answer, in which they acknowledged the nonpayment in full of the annuity due to the complainant, and in excuse averred that the income of the estate was insufficient to meet the requirements of their trust; admitted that they had not, prior to the filing of the bill, made the investments directed by the will, but averred that they were then making preparations to do so, and that since the filing of the bill they had completed the investments. And in their answer they set out specifically the parts of the estate assigned to each of the beneficiaries of the investments, among them this complainant; and thereupon they say, "having now carried out the several provisions of the said will, they ask this court to approve the same." They admitted that there still remained a residue of the trust estate for distribution, consisting of real estate in Cincinnati and elsewhere, and they prayed the direction of the court as to whether such residue should be now distributed to the devisees or held until the determination of the life estate of each, and whether in kind, or in the proceeds of sale after conversion. The complainant, after some corrections had been made, accepted as satisfactory the investment made for her, and the court approved it. By the decree of the court, entered October 4, 1892, it was declared also that the complainant was by the terms of the will entitled to receive the annuity in full, and that resort might be had to the corpus of the estate, if the income proved insufficient, but that she had waived that right and accepted the lesser sum, and could not now reclaim the

balance of the annuities.    With respect to the rest and residue of the
estate, it was by the decree adjudged as follows:

"That the complainant and the other residuary legatees, defendants herein,
under item 14 of said will, the court further finds and adjudges are entitled
to a present division of the residue of the estate, all the other provisions of
the will having, as appears to the court, with the exceptions heretofore noted,
prior to item 14 of said will, been carried out, and said defendants, trustees,
etc., as aforesaid, are hereby ordered and directed to pay over and transfer
to the said residuary legatees, complainant and defendants, their said re-
spective one-sixth (⅙) shares and interest in said rest and residue of said
estate," with the exception of one share to E. Mary Williamson, which the
court reserved for further disposition.

Thereupon the decree of the court proceeds as follows:

"The court further orders, adjudges, and decrees that the complainant is
not entitled to so much of the relief prayed for in her bill of complaint and
supplemental bill herein as seeks an order from the court directing the de-
fendants, trustees, etc., to make a report and itemized statement and descrip-
tion, and a full account render of all the rest and residue of the estate left
and remaining after full payment shall have been made under and pursuant
to the various devises preceding item 14 of the will, and as seeks an account-
ing from said defendants, trustees, etc., as aforesaid, and that said relief be,
and the same hereby is, denied, and all said matters relating to the ascer-
tainment of said rest and residue, and an accounting from said defendants,
trustees, etc., as aforesaid, is hereby left to the probate court of Hamilton
county, Ohio, where the affairs of said estate have heretofore been adminis-
tered.

"It is further ordered, adjudged, and decreed that as soon as the rest and
residue of the estate shall have been ascertained by the probate court of Ham-
ilton county, Ohio, and an accounting had therein that the complainant, the
said residuary legatee, is entitled to have paid over, divided, and distributed
to her her distributive share of said rest and residue in kind as prayed for in
the bill of complaint, and said defendants, Herron and Fisher, as aforesaid,
are hereby ordered and directed, in making the distribution as aforesaid of
the rest and residue of said estate, to divide the different kinds of property of
which it may consist into as nearly six equal shares as possible, and to pay
over and to transfer to the said complainant and such other residuary lega-
tees as may desire it their respective shares in each of said kinds of property
in kind," with further direction for conveyances.

The complainant appealed from those parts of said decree which
denied to her the balance of the annuities and refused an accounting
in that court of "the rest and residue of said estate left in their
hands."   This court on the appeal sustained the assignments of er-
ror in both particulars, and remanded the cause with directions to
decree for the complainant for the balance of the annuities, and to
require the trustees to account for the residue of the estate remain-
ing in their hands subject to distribution under the provisions of
paragraph 14 of the will, and, when that residue should be ascer-
tained, to distribute it to those entitled.   Comstock v. Herron, 6
U. S. App. 626, 55 Fed. 803, 5 C. C. A. 266.   In all other respects
the decree of the court below remained undisturbed.   On the re-
ception of the mandate, the court below, on June 21, 1893, entered
the particular decree therein required, and made the following order
of reference:

"It is further ordered that this cause be and is hereby referred to B. R.
Cowen, who is hereby appointed special master for said purpose, to state an
account showing the rest and residue of the estate in the hands of said execu-

tors and trustees after carrying out the various provisions of said will prior to item 14. For said purpose said special master is ordered to make such account of the transactions of the said trustees and executors from the year 1882, the date of their appointment, as may be necessary, also to make and allow such credits and charges as may be proper, and as to the accounts filed and approved in the probate court of Hamilton county prior to the bill herein, if they be expected to, they shall have the same force and effect that they would have upon a final accounting in said probate court, and, as to all items to which no exceptions shall be taken, the same be allowed as filed and approved in said court."

Upon the hearing before the master it appeared that the defendants, sometimes designating themselves as executors, and sometimes as trustees, had at several times, extending to May 24, 1890, presented their accounts to the probate court for Hamilton county, some of which had been confirmed and others had not. And it further appeared that the defendants, as executors, on August 1, 1892, while this cause was pending in the court below, and six months after the filing of their answer therein, filed their petition in the probate court for Hamilton county praying for an extra allowance of $2,500 for services rendered by them in the case which were described in the petition. It should be here observed that the services mentioned were wholly bestowed by them, as appears from the petition, in the care and management of the real estate which was in their possession as trustees. It was stated in the petition that they had received no extra allowance for such services. This was an inadvertence, no doubt. In the settlement of their accounts in October, 1885, which was subsequent to anything done by them in their character as executors, they asked for and were allowed for extra compensation $1,000. We refer to this only for the purpose of making it clearer that the extra compensation of $2,500 was allowed to them for their services as trustees. The order of the probate court allowed this $2,500 to the defendants as "trustees." In the account there filed July 30, 1892, the defendants credited themselves with $1,242.93 for certain enumerated services relating to the trust, which seems also to have been allowed by that court, though we have been unable to find from the record that this certainly was so. The master held that this was excessive, and reduced the amount by $663.63, to which the defendants excepted. It does not appear that any notice was given of the filing of the account of July 30, 1892, or the petition of August 1, 1892, or that the complainant had any knowledge of the proceedings. The item of $2,500 was presented to the master as a charge against the estate, and was disallowed by him as one fixed by the probate court, but he considered the claim on its merits and disallowed it. The defendants excepted to this action of the master. The court, on the coming in of the report, seems to have considered the whole subject of the defendants' charges for commissions and allowances on broader lines than the master had done, but, following it in its main features, proceeded to make an adjustment of them upon its own view of their merits, and allowed 5 per cent. on the whole sum which had passed through their hands, and, adding the $1,000 which was allowed by the probate court in 1885, awarded a decree on that basis. The result was practically about the same as

that reached by the master, the difference being only $163.57, and that in favor of the defendants. The complainant has not appealed. The appeal of the defendants brings up only the disallowances by the master of the sums of $2,500 and $663.63, respectively, allowed by the probate court in July or August, 1892, assuming the last named sum to have been allowed. Some embarrassment arises from the fact that there is room for thinking that the court below by its decree allowed extra compensation for the services covered by the order of the probate court, for, if he accepted as a basis for estimating commissions the analogous provisions of the statute of Ohio in regard to executors and administrators, the amounts credited to the trustees were excessive. But the case has been argued here as if these particular exceptions were unaffected by that consideration, and we shall proceed to examine them upon that footing.

The appellants rely upon the proposition that the probate court of Hamilton county had jurisdiction to order the allowances in question in August, 1892, and that the orders were final, and not subject to the control of the Circuit Court of the United States in the suit there pending. And in support of this contention it is strenuously argued that the probate court had possession of the res, and was the proper forum in which to conduct the accounting and all other matters relating to the administration of the estate. We copy the syllabus of the brief of counsel for the appellants as follows:

"The Circuit Courts of the United States have no power, even in a case involving diverse citizenship, to take an estate out of the hands of the probate court having jurisdiction thereof, and order an accounting of the receipts and disbursements thereof."

As applied to this case, this amounts to a denial of the authority of this court to direct the decree which we ordered when the case was here in 1893. This court expressly decided that the accounting should be had in the United States Circuit Court. The decree entered in the court below upon receiving the mandate, and which is copied in the preceding statement, was in accordance therewith. This court had jurisdiction of the cause and of the parties, and power to decree the relief which should be granted, and assuming, for the sake of argument, that it erred in ordering an accounting in the pending cause, the decree, being final, was none the less valid and binding upon the parties. It is pressed upon us that our decision was contrary to the ruling of the Supreme Court of the United States in Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, and, though it is not expressly urged that we should recall our judgment, yet the effect of what is now insisted upon would be to ignore it. But there is no foundation for the contention that the former judgment of this court was in conflict with Byers v. McAuley. In that case there was no trust for administration, and the estate concerned was personal property in the possession of the probate court for the purposes of ordinary administration. It was that possession which formed the obstacle to the assumption of control over it by the federal court. The Supreme Court recognized fully the right of a citizen of another state to invoke the jurisdiction of a federal court for the purpose of obtaining the share to which

he is by law entitled of the estate of a deceased person situated in the state where the suit is brought. But it was held, and that was the gist of the decision, that in exercising its jurisdiction it should not invade the possession of a state court taken for the purpose of administration under the local law. But short of intermeddling with the possession of the state court or controlling the administration, it was not doubted that the federal court could properly proceed to granting full relief. And in that case the Supreme Court directed "a decree in favor of those citizens of other states than Pennsylvania who have petitioned the Circuit Court for relief * * * for their shares of the estate, * * * and an order that they recover from the administrator such sums thus found to be due," and this although the complainants were distributees only of the personal estate. In this case there was no obstacle, such as existed in the case of Byers v. McAuley, arising from possession of the property by the probate court, and we therefore had no occasion to refer to exceptional cases where the presence of such a fact would require a modification of the relief which the court might otherwise give. There was a will by which, after certain specified legacies should be paid, the whole estate was devised to trustees upon a trust in favor of certain designated beneficiaries. The bulk of the estate consisted of real property. It is also to be observed that the fee simple was devised to the trustees, and that the trust was not imposed upon them in their character of executors; their duties and obligations as trustees were quite distinct from those devolved upon them as executors. The fixing of the time when they should hold the property in one character should end, and in the other begin, was not subject to the uncertainty which sometimes exists when the duties of a trustee are knit to those of the executor. Phillip v. Manning, 2 M. & C. 309; Byrchall v. Bradford, 6 Mad. 13; Ex parte Wilkinson, 3 Mont. & Ayre, 145; Willmott v. Jenkins, 1 Beav. 401; 1 Lewin on Trusts (Flint's Ed.) *204. Their relations to the estate were no different from what they would have been if the trustees had been different persons from those who were appointed as executors. They might have accepted the one office and renounced the other. Having accepted both, they would take and hold the personal property as executors until the debts and legacies not included in the trust were satisfied. Then, if anything remained, it would go over to them as trustees, and it would be the duty of the probate court to refrain from exercising an authority which belonged only to a court of general jurisdiction. Wheatly v. Badger, 7 Pa. 459; Williams v. Cushing, 34 Me. 370. But with respect to the real estate, neither the title nor the possession ever passed to the executors. Real estate is not assets which go to the personal representatives of the owner. Neither are the rents and income from it accruing after the death of the owner. 11 Am. & Eng. Encl, of Law, 841; Overturf v. Dugan, 29 Ohio St. 230.

Upon the probate of the will the fee simple passed to the trustees, and the trust became effective. So, also, the rights and interests of the cestui que trust in the estate became securely and definitely fixed. The probate court had no control over it so far as the

realty was concerned, except that, if the personal property proved insufficient to satisfy the creditors, it had statutory authority to order it sold to the extent necessary. Campau v. Campau, 25 Mich. 127. And perhaps it might order a sale of real estate to pay ordinary legacies if the personal assets should prove insufficient, but we should suppose this doubtful in the absence of any statutory power. But in the present case it is sufficient to say that no contingency ever arose in which the probate court had power to take the real estate into its possession or assume any control over it. The debts and legacies were paid without recourse to any statutory proceeding in the probate court. As early as 1885 the debts and legacies had all been paid. The duties of executors were ended. The personal estate was administered, and the trust was freed from all the burdens to which it was subject from the administration of the probate court. Nothing remained but the management and disposition of the real estate remaining unsold for the complete execution of the trust. And when, in 1890, the complainant filed this bill, all the conditions for enforcing the trust, without let or hindrance consequent upon the possession of the property by another court, existed. There is, however, a statute (section 6328, Rev. St. Ohio 1892) which provides that:

"Any trustee of any non-resident idiot, imbecile or lunatic, appointed as aforesaid, and any trustee heretofore or hereafter created by any last will or deed, or appointed by any competent authority, to execute any trust created by any such last will or deed shall, as often as once each two years, render an account of the execution of his said trust, to the probate court of the county in which he was appointed, or in which such last will or deed may be recorded, in the manner provided by law for the settlement of the accounts of executors and administrators; provided, this section shall not apply in any case in which the will or deed creating such trust designates any other tribunal for the settlement of the trust, or in which any other tribunal shall have acquired jurisdiction."

But assuming that this statute is applicable to a trust estate in real property, it gives to the probate court no control over the property itself, but only the authority to biennially settle the trustees' accounts. This authority is, however, denied in any case in which any other tribunal shall have acquired jurisdiction. And this was the condition of things here. Upon the filing of this bill the subject-matter of the trust was drawn into the possession and control of the court. It would have been an anomalous proceeding for the Circuit Court in these circumstances to remit the parties to the probate court for an accounting by the trustees of matters relating solely to the execution of their trust, there being no purpose of undoing anything done by the defendants as executors, or by the probate court in the exercise of its jurisdiction as such. And equally anomalous would it be to permit the trustees, after the Circuit Court had taken jurisdiction of the bill, and they had appeared and submitted thereto and had answered and invoked the direction of the court, to go into the probate court and obtain orders which would intrude into and predetermine the matters and questions belonging to the subject of the suit. The court below did not err in concluding that it was not bound by the orders of the probate court ob-

tained in the circumstances stated. If such a proceeding should be effective, the right of a citizen of another state to bring suit in the United States court would come to little or nothing. The subject-matter of the suit could be subtracted piecemeal, and eventually, either wholly or in part, decided by the state court. Besides all this, the probate court had no jurisdiction whatever of the subject-matter. We presume it is not necessary, but, to avoid any misunderstanding, we think it right to say that no improper motive in resorting to the probate court for the order in question is imputed to the defendants. The supposition that the probate court was the only court competent to deal with such matters had been very persistently maintained by the defendants, and, indeed, was sanctioned by the learned judge who directed the original decree. The petition for the allowance of extra compensation was made by the defendants as executors. The order speaks of it as a petition by trustees, and allows the extra compensation to them; but we attach no special importance to this. The same misnomer of their offices runs through the transactions relating to the estate from the beginning. If any consequence were to be attached to the titles of office assumed on the different occasions, it would lead to inextricable confusion. No doubt the safe and proper way is to impute to the actors the character denoted by their acts, treating them as executors when the thing done is proper for executors, and as trustees when the act is in execution of the trust. This was the distinction adopted in Wheatly v. Badger, supra, when Chief Justice Gibson made a very lucid statement of the law applicable to such a situation. In no other way is it possible to carry into their intended effect the several provisions of the will. Applying this test, it is manifest that their applications to the probate court in July and August, 1892, were made in their character of trustees, for, as already stated, they related solely to matters involved in the trust.

In regard to the merits of the claim for extra compensation, the master in his report said:

"Defendants claim that they are entitled to extra compensation for extraordinary services, even in excess of that already retained. But, as has been shown, the percentage of commissions is largely in excess of the statutory or customary allowances for such services.

"The total value of the money and other property passing through the hands of defendants from the Poor estate was $229,211.49 (page 48, master's report), the great bulk of which was never changed by sale and reinvestments. The statutory fees on that amount would be $4,707.22. The total amount retained for services, including $557.16 hereinafter allowed, was $17,619.19, an amount in excess of the statutory commissions of $12,908.97, or nearly three times the statutory commissions.

"In view of these facts, the extra compensation of $2,500 made after the filing of the bill of complaint herein is disallowed."

The court, in its opinion, said:

"The total amount of moneys passing through their hands, either as executors or trustees, is found by the master to be $229,211.49. The remainder of the property was distributed in kind."

Apparently this was an inadvertence. As the master stated, the great bulk of the $229,211.49 was never changed by sale and rein-

vestments. But, as before stated, the court's allowance was as liberal as that of the master.

In regard to the action of the master in reducing the commission of $1,242.93 by $663.63 to $579.30, which was 2 per cent. of the amount involved, it is to be observed that this claim was presented as a claim for commissions and not as a claim for extra compensation. In Ohio, while no fixed percentage is fixed by statute, the master says it is customary to allow commissions to trustees in analogy to the statute fixing the compensation of executors, assignees, etc., and this we understand to be the rule, though extra allowances may be made in the discretion of the court for cause shown. The master allowed 2 per cent. upon the amount, $28,965.18.

We are unable to find any sufficient ground on which we would be justified in disturbing the action of the master and of the court in rendering the decree in respect to the matters complained of. The costs of the trustees in this litigation in the Circuit Court and in this court have been borne by the estate. We are of opinion that the defendants have no ground in equity to complain of the decree. It is accordingly affirmed, with costs.