UNDERGROUND ELECTRIC RYS. CO. OF LONDON, Limited, v. OWSLEY et al.

(Circuit Court, S. D. New York. April 21, 1909.)

1. COURTS (§ 260*)—FEDERAL COURTS—EQUITY—PROBATE JURISDICTION.
Since the United States Circuit Courts in equity have the jurisdiction of the High Court of Chancery at the adoption of the Constitution, such courts have no jurisdiction of pure probate proceedings quasi in rem establishing the succession of a decedent's property, which at that time was within the exclusive jurisdiction of the ecclesiastical courts.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 792; Dec. Dig. § 260.*
Probate jurisdiction, see note to Bedford Quarries Co. v. Tomlinson, 36 C. C. A. 276.]

2. COURTS (§ 260*)—FEDERAL COURTS—CLAIMS AGAINST ESTATES.
Federal courts act with reference to estates of deceased persons only to ascertain and enforce claims between citizens of different states after the state courts have probated the will or established intestacy.
[Ed. Note.—For other cases, see Courts, Dec. Dig. § 260.*]

3. COURTS (§ 260*) — APPOINTMENT OF RECEIVERS — JURISDICTION OF FEDERAL COURTS.
While proceedings for the probate of a will or the establishment of intestacy of a decedent's estate are in abeyance or in dispute, the federal Circuit Court has jurisdiction, at the instance of a noncitizen creditor, to appoint receivers to preserve the estate.
[Ed. Note.—For other cases, see Courts, Dec. Dig. § 260.*]

4. EQUITY (§ 427*)—BILL—PRAYER FOR RELIEF.
Where a bill prays for general relief, a court of equity may give any relief consistent with the case made, though it is more, less, or different from the relief specifically prayed for.
[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1005–1008; Dec. Dig. § 427.*]

5. COURTS (§ 260*)—FEDERAL COURTS—APPOINTMENT OF RECEIVER.
Nonadministration of a large estate had continued for four years, and was likely to continue much longer. Large charges had accumulated, and taxes had remained unpaid for several years. An art gallery had been advertised for sale under a mortgage amounting to nearly $300,000, and no insurance had been taken out on the decedent's house or its contents. Decedent's real estate was worth over $2,000,000, and his collections, worth over $1,000,000, were in the possession of one not entitled to the possession of the real estate, who had paid no rent therefor, and who was not entitled to a large part, if any, of the collections, which might at any time be removed from the state. The Surrogate's Court in New York had previously taken jurisdiction constructively of the personalty, but the executor was enjoined from proceeding therein until further order of the circuit court of Cook county, Ill., which injunction had not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

been set aside. *Held*, that a nonresident creditor was entitled to the appointment of a receiver by a federal court to take charge of the property until proceedings were taken for its disposition in the probate court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 260.*]

6. WILLS (§ 801*)—WIDOW'S ELECTION—EFFECT.
Where a will authorized testator's widow to occupy the home as long as she desired, her election, after the expiration of 40 days, as provided by Real Property Law N. Y. (Laws 1896, p. 587, c. 547), § 184, to take against the will, was tantamount to a refusal to occupy the premises, so as to require her to vacate them.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2077–2090; Dec. Dig. § 801.*]

7. RECEIVERS (§ 14*)—GROUNDS OF APPOINTMENT—PRESERVATION OF PROPERTY.
Where a widow continued in possession of property of her husband's estate more than the 40 days, during which she was authorized by Real Property Law N. Y. (Laws 1896, p. 587, c. 547), § 184, to occupy the homestead after her husband's death, and subsequently elected not to take under her husband's will, bequeathing to her the use of the home for life at her election, her possession of the property after such election was unavailable to her in the federal courts as against the legal title as affecting the right to the appointment of a receiver of the property.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 14.*]

In Equity.

Cravath, Henderson & De Gersdorff, for complainant.

Hornblower, Miller & Potter and Jas. R. Soley, for defendant Yerkes.

WARD, Circuit Judge. April 5, 1909, the complainant filed a bill as creditor in the sum of $796,619.01 of the estate of Charles T. Yerkes, deceased, of Chicago, Ill., upon its own behalf and on behalf of all other creditors who should come in against Louis S. Owsley, as executor, and the Central Trust Company, as trustee under the decedent's will, Mary Adelaide Yerkes, his wife, Charles E. Yerkes, and Bessie L. Rondinella, his children, and Edward O'Malley, Attorney General of the state of New York, praying for the appointment of a receiver of the real and personal property of the estate within this district. The executor, the trustee, and the children consented to the application. Mrs. Yerkes and the Attorney General were not present nor represented nor notified. A temporary receiver was appointed with an order on the parties to show cause why the receivership should not be continued during the pendency of the suit, returnable April 9th. The marshal made due service of the subpoena issued to Mrs. Yerkes, and on the return day she was represented by counsel, who entered a special appearance objecting to the jurisdiction of the court.

December 29, 1905, Mr. Yerkes died, and his will, dated May 22, 1905, was duly proved and admitted to record in the probate court of Cook county, Ill., March 15, 1906. Of the executors named only Louis S. Owsley qualified. The Illinois Trust & Savings Bank declined the appointment February 2, 1906, and Mrs. Yerkes, under the name of Mary Adelaide Mizner, she having intermarried January 30, 1906, with one William Mizner, declined the appointment February 17, 1906.

The real estate in this district consists of a stable No. 139 East Sixty-Ninth street, and premises at the southeast corner of Sixty-Eighth street and Fifth avenue, No. 864 Fifth avenue, which latter were bought in three separate parcels. July 5, 1892, the first lot on the corner of Sixty-Eighth street and Fifth avenue, together with the stable No. 139 East Sixty-Ninth street, were conveyed to Mrs. Yerkes by deed dated July 5, 1892, recorded July 13, 1893. Title to these premises Mrs. Yerkes conveyed to Mr. Yerkes by two sets of deeds, viz., the first through Carlos E. Cook, dated February 1, 1893, and recorded December 3, 1908, and the second through Mary A. Fitzpatrick, dated January 23, 1903, recorded June 10, 1905. January 23, 1903, Mr. Yerkes conveyed a lot adjoining the above-mentioned premises on the east to Mrs. Yerkes, who on the same day through Mary A. Fitzpatrick, reconveyed the same to him; the deeds being recorded June 10, 1905. December 8, 1903, a lot adjoining the premises above mentioned on the south was conveyed to Mr. Yerkes, deed recorded February 10, 1904, which he subsequently mortgaged for the sum of $225,000, payable February 10, 1906.

The personal property consists of railroad stocks and bonds pledged in the hands of third parties for loans to Mr. Yerkes, and of collections estimated to be worth over $1,000,000.

The will gave the use of 864 Fifth avenue, together with its contents, to Mrs. Yerkes for life, and further provided that:

"Upon the death of my said wife, Mary Adelaide Yerkes, or in case she shall notify my trustee hereinafter named, or its successor, in writing, that she desires to relinquish her right to use said premises as a home, then and in that event I direct my said trustee hereinafter named to immediately, on the happening of either of said events, cause to be incorporated under the laws of the state of New York, or by special act of the Legislature of said state, a corporation for the purpose of establishing, maintaining and preserving an art gallery or galleries in said premises, and hereby give, devise and bequeath in such event to said corporation when so formed the said plot of ground and the building thereon, together with all paintings, works of art, statuary, bronzes, tapestries and bric-a-brac therein contained and also that may be located elsewhere, under such rules and regulations as said corporation may prescribe upon the express condition subsequent and continuing that the properties so bequeathed and devised shall be known and designated as the Yerkes Galleries, and upon failure at any time of such condition the said property, together with the paintings, works of art, statuary, bronzes, tapestries and bric-a-brac therein contained shall be and become a part of my residuary estate."

The testator further provided:

"I hereby nominate and appoint as my trustee under this my last will and testament, the Central Trust Company of New York, a corporation organized under the laws of the state of New York, and hereby direct my executors hereinafter named, upon a settlement of my estate in the probate court of Cook county. Ill., to transfer all my property, real, personal and mixed, not herein otherwise disposed of, to my said trustee, to be held by it for the purpose of carrying out the provisions of this my last will and testament."

The provisions in the will in favor of Mrs. Yerkes were to be in lieu of dower. The residue of the estate was given to the trustee to be held on certain trusts.

169 F.—43

In October, 1905, when Mr. Yerkes was in London, Mrs. Yerkes had his safe in 864 Fifth avenue, the combination of which was known only to Mr. Yerkes and the defendant Owsley, drilled open, and she found in it, among other things, the deeds dated February 1, 1893, conveying the house and stable through Cook to Yerkes, and a bill of sale dated May 24, 1896, assigning to her "her executors, administrators and assigns, all and singular the furniture and household goods together with each and every painting and picture now contained in the house, No. 864 Fifth avenue in the city of New York of which a schedule is hereunto annexed. * * *" The only reference to pictures in the schedule is "all pictures in picture gallery and in the house as are published in the catalogue 1893."

Mrs. Yerkes also has a declaration signed by Mr. Yerkes dated November 19, 1884, as follows:

"In order that there may be no question arise at my decease or at any time respecting the ownership of the furniture in my house at No. 3201 Michigan avenue, Chicago, Ill., I hereby state and declare that my beloved wife Mary Adelaide Yerkes of Chicago aforesaid is the sole and absolute owner of said furniture, including all crockery, cutlery, silver, plated and glassware, carpets, curtains, bedding, linen and all other household goods and effects, in said house or belonging thereto and that said property was purchased for my said wife, and on her account and in her right, and as her own, with money given by me to her and appropriated to that purpose."

And a bill of sale dated July 14, 1887, assigning to her, her executors, administrators, and assigns:

"All the furniture of every kind, name and description, all the silverware, silver plated ware, glassware, china, crockery, linens, bedding, carpets, musical instruments, pictures, objects of virtue, articles of bric-a-brac, and all other objects of household use and adornment, all in the dwelling house No. 3201 Michigan avenue, in the city of Chicago, county of Cook and state of Illinois."

Mr. Yerkes returned from London in November, 1905, going directly from the steamer to the Waldorf-Astoria Hotel, where he died December 29, 1905. March 14, 1907, Mrs. Yerkes elected to take against the will and was thereupon entitled to dower in one-third of the real estate and one-third of the personalty after payment of debts. January 18, 1909, the defendant Owsley filed his petition for ancillary letters testamentary in the Surrogate's Court for the County of New York, and a citation was issued returnable March 18th. On the same day Mrs. Yerkes filed a petition in the probate court of Cook county, Ill., for the removal of Owsley as executor, which was denied March 20, 1909. March 25, 1909, Mrs. Yerkes filed a petition in the superior court of Cook county in chancery, asking for the appointment of a receiver of the estate of Charles T. Yerkes, and that Owsley be restrained from further prosecuting his petition for ancillary letters in New York. A temporary injunction was granted, and a motion to vacate the same is pending for hearing.

It will be seen from the foregoing that Mrs. Yerkes had title to the first parcel of 864 Fifth avenue for a little over six months, to the second parcel but for an instant, and to the third not at all; also, that she has had no title to the first parcel and to the stable since February 1, 1893, nor to the second parcel since January 23, 1903. Her claim to

any of the personalty rests upon the declaration which, if it covers collections at all, speaks only of property in 3201 Michigan avenue, Chicago, of the date November 19, 1884, and bill of sale which does cover art objects in the same place July 14, 1887, both of which were apparently delivered to her, and the bill of sale taken from Mr. Yerkes' safe, which was apparently never delivered, and covers pictures in 864 Fifth avenue in the catalogue of 1893. The order appointing the temporary receiver authorized him to take possession of the property temporarily, and the defendants were ordered to turn the same over to him and enjoined from in any way interfering with his possession and management.

It is often said in the cases that the United States Circuit Courts in equity have the jurisdiction of the High Court of Chancery at the time of the adoption of the Constitution. Fontain v. Ravenel, 17 How. 369, 384, 15 L. Ed. 80. The ecclesiastical courts had at that time the sole right of probating wills and establishing administrations. These are pure probate proceedings quasi in rem, establishing the succession to a decedent's property. The Court of Chancery habitually distributed the estates because of its power to regulate trusts, compel discovery, and settle accounts. Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Bispham's Principles of Equity, §§ 528, 529. Accordingly, the United States Circuit Courts in equity have no jurisdiction of these purely probate proceedings and cannot distribute generally, because the state courts must first establish the right of succession. The federal courts only act in the way of ascertaining and enforcing claims between citizens of different states after the state courts have probated the will or established the intestacy; but, while such proceedings are in abeyance or in dispute, the federal court may appoint receivers for the preservation of the decedent's estate. When the power of the United States Circuit Courts in equity to administer a decedent's estate is mentioned, as it often is in the cases, I do not think that general administration is meant. Comstock v. Herron, 55 Fed. 803, 811, 5 C. C. A. 266; Herron v. Comstock, 139 Fed. 370, 376, 71 C. C. A. 466; Hayes v. Pratt, 147 U. S. 557, 570, 13 Sup. Ct. 503, 37 L. Ed. 279; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Hale v. Tyler (C. C.) 115 Fed. 833. The court, however, went much further in the case of Ball v. Tompkins (C. C.) 41 Fed. 486.

It must be admitted that the bill does pray for the administration of the estate. As, however, it contains a prayer for general relief, the court is competent to give any relief consistent with the case made out in the bill, even if it is more or less or different from the relief specifically prayed for. The situation disclosed is certainly a very unsatisfactory one for creditors. The decedent died December 29, 1905, and nothing whatever has been done with reference to his property within this district. Large charges have been allowed to accumulate. Taxes are in arrears upon the main house for 1903, 1904, 1905, 1906, and 1907, and unpaid for 1908, upon the gallery for 1904–1908, inclusive, upon the stable for 1903, 1904, 1905, 1906, 1907, and 1908 unpaid, aggregating about $200,000. The gallery is advertised for sale in June under the mortgage amounting now to nearly $300,000. There

is no insurance on the house or its contents. The decedent's real estate, worth over $2,000,000, and his valuable collections, worth over $1,000,000, are in the possession of one not entitled to the possession of the real estate, nor paying any rent for it, nor entitled to a large part, if any, of the collections. The latter might at any time be taken out of the state. We need not inquire whether this is due to the supineness of the executor or to the mutual suspicions and ill will existing between many of the parties in interest. The nonadministration has continued for nearly four years and is likely to continue much longer. The property should be preserved in the hands of a disinterested person for the benefit of the creditors, if that can be done. The complainant's interest is only as creditor. It has no controversy with the estate because its claim has been presented, proved, and established; but it is distinctly interested in the preservation of the decedent's estate as a fund out of which it may be paid.

Before this bill was filed, the Surrogate's Court for the County of New York had taken jurisdiction of the personalty at least constructively. Farmers' Loan & Trust Company v. Railroad Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. When the defendant Owsley applied for ancillary letters here, and the citation was issued and served, a proceeding was begun which I think ordinarily would prevent this court from intervening; but the proceeding has been stopped on the motion of Mrs. Yerkes by the injunction of the superior court of Cook county, Ill., in chancery, enjoining Owsley from proceeding in it until the further order of the court. For all that appears his application may never be proceeded with. Therefore I will continue the receivership as to the personalty until that motion is disposed of. If Owsley is permitted to proceed and obtains letters, no reason is now apparent why the personalty should not be turned over to him.

As by the law of New York the decedent's real estate may be resorted to if his personalty is insufficient to pay his debts, I think a federal court of equity may proceed against it even if a state court could not. In other words, the form of reaching it prescribed by the state law cannot limit the power of the federal court. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260. And, similarly, the fact that the Surrogate's Court of New York County can appoint a temporary administrator upon the application of creditors does not limit the power of this court to appoint a receiver.

In Atkinson v. Henshaw, 2 Ves. & Bea. 96, Lord Eldon held that the Court of Chancery would appoint a receiver of a decedent's estate during a contest as to probate in the ecclesiastical court, notwithstanding that court had itself power to appoint a temporary administrator. This is the very situation that exists in the present case. Much later Vice Chancellor Malins held that the Chancery Court would not appoint a receiver if the probate court had actually appointed a temporary administrator. Veret v. Duprez, L. R. 6 Eq. 329.

Real property in this state cannot be resorted to unless it appears that the decedent's personalty is insufficient to pay his debts. Code Civ. Proc. §§ 2749, 2756. The executor in this case is of opinion that the personalty will not pay the debts. I suppose the trustee of the re-

siduary estate is of the same opinion, because, although Mrs. Yerkes' refusal to take under the will is tantamount to her refusal to occupy the premises as a home, the trustee has taken no steps to organize a corporation, as required by the will, to take over the premises and their contents as the Yerkes Galleries, and has consented to this application.

. The only statement of Mrs. Yerkes' claim to be the owner of 864 Fifth avenue excepting the gallery is to be found in article 20 of her petition to the superior court of Illinois in chancery, as follows:

"That your oratrix was the owner in fee simple of said real estate from the year 1892, until May 23, 1903, upon which date she was induced to convey the said premises to one Mary A. Fitzpatrick, and the said Mary A. Fitzpatrick then conveyed the said premises to the said Charles T. Yerkes. That no money was paid to your oratrix or to any one as a consideration for the execution of the said deeds, but your oratrix caused the said title to pass from her to the said Charles T. Yerkes upon the representation that the said Charles T. Yerkes had made certain bequests to your oratrix in a certain last will and testament then and there by him executed, and upon other representations then and there made to your oratrix. That said representations constituted a contract with your oratrix, and have not been carried out, but were defeated by the said Yerkes by the execution of a later will, and the said considerations and representations have wholly failed. That your oratrix first discovered the failure of the consideration for said deeds upon the death of said Charles T. Yerkes, and has ever since asserted her claim as owner to the said premises, and has remained in actual physical possession thereof."

This claim she has taken no steps to make good. It is said that her claim that she owns the premises entitles her to possession. I do not think so. During his lifetime her occupation from February 1, 1893, was consistent with his title, and from June 10, 1905, with his record title as his wife. After his death she was, as widow, entitled to remain, by virtue of her dower right, in possession for 40 days, and no longer (Real Property Law [Laws 1896, p. 587, c. 547] § 184), or under his will she was entitled to remain until she determined whether she would occupy the premises as a home. March 14, 1907, she determined not to do so, when she elected to take against the will. After these periods had passed, her possession might be sufficient notice of her claim to a purchaser, if she subsequently made it good in a court of equity; but it would not avail her in the federal courts against the legal title.

As in the case of the personalty, if steps are taken in the Surrogate's Court of the County of New York to dispose of the realty, this court, as at present advised, will withdraw its receiver. The receivership will be continued until the further order of the court.