### BALL v. TOMPKINS et al.

*(Circuit Court, W. D. Michigan, S. D.* February 11, 1890.)

1. CIRCUIT COURTS—JURISDICTION—ADMINISTRATION OF ESTATES.
  By virtue of their chancery jurisdiction, the federal circuit courts have jurisdiction over the administration of estates when the requisite citizenship and other conditions exist. This jurisdiction does not extend to the appointment of administrators, confirmation of executors, or the probate of wills; nor will it be exercised when the state courts of concurrent jurisdiction have taken possession of the subject-matter of the controversy.

2. SAME—STATE COURTS—JURISDICTION.
  The possession of the state court which will exclude the exercise of power by the federal court, and *vice versa*, must be the possession of some thing, corporeal or incorporeal, which has been taken under the dominion of the court. A controversy or inquiry is not such thing, and the pendency of a suit or proceeding in one court, involving a question, controversy, or inquiry, is no bar to the exercise of jurisdiction in the determination of the same question, etc., in the other.

3. SAME—DISAGREEMENT AMONG EXECUTORS—APPOINTMENT OF RECEIVERS.
  Testator, a resident in Michigan, devised certain real estate in trust to his executors, one of whom was his widow, to collect the rents and profits until January 1, 1890, and to pay therefrom the taxes, insurance, repairs, and interest on incumbrances, and the remainder, in equal shares, to his widow and children, annually or oftener. They were also directed to file annual accounts of receipts and disbursements in the office of the judge of probate of the county in which the property was situated. At the expiration of the trust period the realty was to go to the widow and children in equal shares. His personalty and other realty were charged with the payment of his debts. The will was probated in the state court, and the executors qualified. By the law then in force, executors and administrators had no right to the possession of real estate. *Held,* that the executors had possession of the trust property as trustees, and that the possession of the state probate court was not such as to exclude the federal court from assuming jurisdiction, upon a disagreement among the executors about the management of the trust, and appointing a receiver.

4. SAME—EXPIRATION OF TRUST—CONTINUING RECEIVER.
  Upon the expiration of the trust period, it appearing that the tenants in common disagree, and that they cannot act harmoniously in the management of the property, the federal court will permit a supplemental bill to be filed, praying for partition, or sale if necessary, and continue the receivership.

In Equity. Upon motion to discharge receiver.

*T. J. O'Brien,* for complainant.

*Joseph H. Tompkins,* for J. H. & M. M. Tompkins.

SEVERENS, J. The facts material to the purposes of the present motion are substantially as follows: On the 4th day of February, 1876, Byron D. Ball, of Grand Rapids, died testate. He left a widow, Martha M.,—one of the defendants,—and four children, of whom the complainant is one, and three of the defendants are others. The property left by him consisted principally of real estate known as the "Ball Block,"

in the city of Grand Rapids. The value of his estate at the time of his decease was about the sum of $35,000 over and above incumbrances. By his will, he bequeathed his household furniture, and his books and pictures, to his wife, and then devised the Ball block to his executors, who are his widow and Harvey J. Hollister, who is also one of the defendants, in trust, to collect the rents and profits thereof until the 1st day of January, 1890, and therefrom to pay the taxes, insurance, repairs, and interest on incumbrances, and the remainder, in five equal shares, to his widow and four children, annually or oftener. He also directed them to file annual accounts of their receipts and payments in the office of the judge of probate for Kent county, in which the city is situated; and he authorized them to mortgage the property, with the approval of the judge of probate, for the purpose of raising money necessary to rebuild or repair, in case of destruction or great damage by fire or other cause, or to pay off incumbrances. And his will further provided that the trust aforesaid should terminate on January 1, 1890, and that thereupon the real estate aforesaid should go to the widow and children,—one equal undivided fifth part to each. And the testator charged his personal property and his other real estate with the payment of his debts and the expenses of administration, and authorized his executors to sell such other real estate only if found necessary to pay such debts and expenses, after using the personal property, or for the protection and improvement of the Ball block. This will was duly admitted to probate in the Kent county probate court on the 6th day of March, 1876, and letters testamentary were issued to the executors therein named. They assumed and have exercised the duties of the trust. The widow took charge of the children, and lived with them in rooms in the block; and for some years matters went on, without serious disagreement between the executors, in accordance with some of the provisions of the will, though not with all. In 1883, Mrs. Ball married the defendant Joseph H. Tompkins, who had for a time previous to that been her legal adviser in matters pertaining to the estate; and he has continued to act as such ever since, residing with her in the block. From a time shortly previous to this marriage to the present, the executors have disagreed. Litigation has been going on between them, of a recriminatory character, until, at the time of the commencement of this suit by the filing of the bill, the defendant Hollister had practically either almost wholly withdrawn or been ousted from the management of the estate, and the defendants Tompkins were in control. It is not the purpose of the court now to express any opinion as to whether Mr. Hollister has been in fault or not, but it is apparent from the record that he has maintained his office as executor only by a struggle. On the 3d day of April, 1889, the complainant filed his bill in this court, charging gross and long-continued mismanagement of the estate in many particulars, which are set out in the bill, and also charging therein, in substance, that Mr. and Mrs. Tompkins, in violation of the trust contained in Mr. Ball's will, have absorbed and appropriated to their own use the income of the estate; that the children were receiving nothing; that the insurance was not kept up;

that the taxes for two years were in arrears; and that many unjust and groundless claims and accounts in favor of Mrs. Tompkins had been presented to the probate court, and there allowed, which, with the increasing volume of incumbrances, resulting from non-payment of interest, threatened to swallow up the estate. The defendants denied the charges of mismanagement of the estate and of violation of the trust, and they also denied all the bad faith charged in the bill, and alleged that they were doing the best they could for the estate, and for all concerned; and they further showed that a petition for a license to sell the real estate,— the Ball block,—for the payment of debts and expenses, had, previous to the filing of the bill, been presented to the probate court, and had been allowed, and was then pending on appeal in the circuit court of the state for the county of Kent. This court, without undertaking to pass upon all the charges made in the bill, but in view of the fact that it clearly appeared that the executors had been for a long time in disagreement; that the complainant had received for many years but a mere trifle from the estate; that the estate itself, once valuable, was now so nearly exhausted that it was a question whether, in its then management, it would do more than pay its liabilities; and that the interest and taxes which were left unpaid must be provided for, or the property sold on mortgage or tax-sale,—appointed a receiver to take the rents and profits, and bring them into court. The court, in appointing a receiver, expressed a doubt as to whether this receivership should last beyond the declared trust expiring on the 1st of January, 1890. The foregoing statement, though not enumerating all the details of fact alleged on either side, covers all that are now necessary to be stated.

The receiver has acted and collected all the rents to January 1st, and a motion is now made to discharge him. The gound of the motion is that the probate court is the proper tribunal for the trial and determination of such matters; that the time has now elapsed during which the executors were to act as trustees in taking the rents and profits; that they now have the right to possession as the officers of the probate court; and that the latter court has possession of the subject-matter of the controversy by a jurisdiction already extended over it when the present suit was commenced. The complainant has submitted, and asked leave to file, a supplemental bill setting forth the original proceedings, the expiration of the trust to receive rents and profits as expressly created by the terms of the will, and the arrival of the date when the right of the devisees to the possession accrued, and praying for further relief by partition, among other things. There can be no doubt that the probate courts of Michigan are clothed with authority, by the laws of the state, to hear and determine all questions arising in the ordinary course of administration and distribution of estates. It has obviously been the policy of the state to distribute the judicial power in such a way as to produce this result. But it is also clear that it was foreseen and expected that questions would arise which would require the exercise of the jurisdiction of a court having ampler powers for inquiry and redress than the probate court is invested with. The state court of chancery has concur-

rent jurisdiction in respect to some of the matters with which the probate court is authorized to deal; and it stands in waiting to help out the weaker tribunal, by taking cognizance of cases and questions, when there is no adequate remedy in the probate court. It is not necessary to determine whether the present case is one in which the state court in chancery would be authorized to entertain jurisdiction. The circuit courts of the United States were, from their original grant of authority, invested with all the then exercised powers of the court of chancery in England, so far as they had application in our political system. *Green's Adm'x* v. *Creighton*, 23 How. 90; *Pennsylvania* v. *Bridge Co.*, 13 How. 518; *U. S.* v. *Howland*, 4 Wheat. 108; *Fontain* v. *Ravenel*, 17 How. 369; *Payne* v. *Hook*, 7 Wall. 425. One branch of the English chancery jurisdiction was the administration of estates. The ecclesiastical courts in that country had very limited powers in such matters. The jealousy with which they had been regarded had kept them shorn of authority to do many things necessary to a complete administration, and the marshaling and distribution of assets. Some points of authority had been gained, and others, equally essential to any systematic jurisdiction, had not. What were possessed were crude and imperfect. The consequence was that the court of chancery exercised its powers, and applied its doctrines, in administering estates. As soon as the representative of an estate was appointed, he was regarded as charged with a trust. This brought him, under the familiar doctrine, within the control of that court. The ecclesiastical courts had no power to deal with trusts. The examination and settling of accounts was often necessary. This, again, the ecclesiastical courts could not do, but it was peculiarly a province of the court of chancery. The ecclesiastical courts could not marshal and distribute the assets. The court of chancery had ample power to do this. That was the condition of things, and this the scope of the equity practice, which are to be regarded when we contemplate the jurisdiction of the federal courts in equity conferred by the judiciary act. 1 Story, Eq. Jur. § 532 *et seq.* The power and authority over these subjects thus conferred remain to this time, unabridged by any legislation of congress, the same in every state of the Union. They cannot be divested or impaired by state legislation. *Hyde* v. *Stone*, 20 How. 175; *Bank* v. *Jolly's Ad'mr*, 18 How. 503; *Payne* v. *Hook*, 7 Wall. 425; *Ellis* v. *Davis*, 109 U. S. 498, 3 Sup. Ct. Rep. 327; *Borer* v. *Chapman*, 119 U. S. 587, 7 Sup. Ct. Rep. 342. The state may confer jurisdiction of such matters upon courts of its own creation, as has been universally done, in all the states, by the establishment of some kind of probate court, by whatever name called, and conferring upon them such authority. And thus in the same territory are courts of concurrent jurisdiction over these subjects. This jurisdiction, in the courts of the United States, does not, of course, extend to the appointment of administrators, or the confirmation of executors, nor the matters made necessary by the state law for their investiture of the trust, including in such the probate of the will, if that is required by the local law to give it validity. The ecclesiastical courts, and not the court of chancery, invested the administrator or executor

with his authority, qualified by the will, if there was one; and therefore the court of chancery, as the federal courts in equity are authorized to do now, regarded him and his trust-estate, affected by the law applicable to his and its situation, as subject to the control of the court. If the requisite citizenship and other conditions exist, this jurisdiction of the circuit courts in equity may be invoked. The cases last cited, and *Gaines* v. *Fuentes*, 92 U. S. 10, 20, 21; *Arrowsmith* v. *Gleason*, 129 U. S. 86, 98, 9 Sup. Ct. Rep. 237. But, in the exercise of this, as well as of other branches of its authority, this court cannot invade the possession of the subject-matter of controversy already taken by the state court having concurrent authority, and in the exercise thereof; for the rule is here, as elsewhere, that the court which has first acquired possession of the subject will retain it, and the power to dispose of it by its own adjudication. *Williams* v. *Benedict*, 8 How. 107; *Freeman* v. *Howe*, 24 How. 450; *Yonley* v. *Lavender*, 21 Wall. 276; *Borer* v. *Chapman*, 119 U. S. 600, 7 Sup. Ct. Rep. 342.

And this brings us to the pivotal question in the present inquiry: What is the nature and character of the possession of the state or federal court which excludes the exercise of authority over the subject or thing by the other? From the authorities on this subject, (which in the circuit courts are not altogether harmonious,) and from the reasons for the rule, I apprehend it to be, substantially, that the possession contemplated as sufficient to make it exclusive is that which the court by its process, or some equivalent mode, has, either for the direct purpose of the proceeding, or for some other purpose ancillary to the main object, drawn into its dominion and custody some thing. That thing may be corporeal or incorporeal,—a substance or a mere right. But a controversy, a question, an inquiry, is not such a thing. These may be the subject-matter of jurisdiction in a pending cause, which often proceeds, from the beginning to the judgment, without the court's having taken actual dominion of anything. But there is no exclusive jurisdiction over such a matter. The result may be a judgment which will establish a right, but the court has not had any possession. The pendency of a controversy in a suit in a state or federal court is no bar to a suit in the other court involving the same controversy, (*Stanton* v. *Embrey*, *Adm'r*, 93 U. S. 548;) and each will proceed, in its own course, to a judgment establishing the right. The control which each court has over its own processes has always been found adequate to prevent mischief from diverse judgments in the several jurisdictions. But, in proceeding on its way, whenever either court finds that the other has already taken actual dominion over some objective thing related to the subject, it will let the thing alone, so long as that dominion is retained, and proceed, if there be enough material besides to support the exercise of its jurisdiction, and the pursuit may reach fruit. If not, it will stop. There are many cases in the Supreme Court Reports where this subject has been discussed, and these principles applied. Some of them have been already cited. Others are: *Heidritter* v. *Oil-Cloth Co.*, 112 U. S. 294, 5 Sup. Ct. Rep. 135; *Railroad Co.* v. *Vinet*, 132 U. S. 478, 10 Sup. Ct. Rep. 155.

Tried by this test, is the probate court in possession of the real estate in question? Byron D. Ball died in 1876, and his will was probated in the same year, and letters testamentary issued. By the statutes of Michigan in force at that time, executors and administrators had no right to the possession of the real estate. In 1881 the law was changed, and the executor or administrator was allowed to take and retain possession of the realty until the debts were paid. But the rights of the parties claiming under the will were fixed when the will was probated, and among those rights was that of the *cestuis que trustent*, the widow and children, to the rents and profits of this property. These rents and profits were not assets, and did not belong to the executor as the administrative officer of the probate court. The statute of 1881 could not, and did not purport to, deprive persons of vested rights. *Van Fleet* v. *Van Fleet*, 49 Mich. 610, 14 N. W. Rep. 566. The body of the real estate itself might still, as before, be taken to pay debts and expenses, if other assets failed, but not the rents and profits, as such, alone. The direction in the will to file annual accounts of the rents and profits and disbursements in the office of the judge of probate did not make them ordinary, undisposed-of assets. It is clear from the later provisions in the will that the testator himself intended and expected that his other property would be employed, in exoneration of this real estate, to the payment of his debts and administration expenses, and that it would be sufficient. At the common law, an executor has no control of the real estate, except what the will gives him. That instrument constituted the bounds of his authority in that regard. *Brush* v. *Ware*, 15 Pet. 93; Schouler, Ex'rs, §§ 212, 213. By statute, his testamentary powers and duties are restrained and modified only to the extent necessary to bring the estate under its liability to pay debts and expenses in the course of ordinary administration. As has been shown, the possession of this property was by the executors as trustees, and the income therefrom a trust fund. In their capacity as statutory administrators, they had no power over it. *Hill* v. *Tucker*, 13 How. 458; Schouler, Ex'rs, above-cited sections, and section 241. As a matter of fact, the probate court received and filed the accounts, including the rents, when they have been presented; and it has acted upon them,—whether properly or not, is not now a question. It was held in *McClead* v. *Davis*, 83 Ind. 263, that the administrator was still liable to the heirs for the rents and profits of the real estate, notwithstanding that he had charged himself with them in his settlement with the probate court, and they had been appropriated to the decedent's debts; and in *Campau* v. *Campau*, 25 Mich. 127, it was held that, after the law of 1871 repealed the older law, giving the administrator the right to possession, the probate court had no jurisdiction at all over the question of the administrator's or executor's right of possession. But the probate court has never undertaken to assume dominion over the real estate. It is perfectly clear that it had no jurisdiction to do so. It could license its sale, if that should become necessary; and, if not, it could release it from that liability which the law, and not any process of the court, put it under, and order its division among those entitled,

upon proper proceedings. If the property should be sold, under a license, and the sale confirmed, the executor's and the devisees' titles would be defeated, but only from that time. The rents and profits, until then, belong to the devisees, as the beneficiaries of the trust,—until January 1, 1890, in the present case,—and after that by their own title, as tenants in common. When, if ever, a license may be granted by the state court for a sale of this property, and whether a sale may take place under such license, are uncertain. Until such sale does take place, the devisees are entitled to take any action in securing the rents and profits, and other rights in the property, which would be open to them if the property could not be sold under the license at all. *McDaniels* v. *Walker*, 44 Mich. 83, 6 N. W. Rep. 112; *Warren* v. *Tobey*, 32 Mich. 45. And they may file their bill in equity for partition, notwithstanding the estate remains unsettled. *Campau* v. *Campau*, 19 Mich. 116. On the other hand, this court has no power, and it has no purpose, to interfere with the probate or any other state court in its proceedings. Undoubtedly, the state court may license the sale of this property, if it finds it expedient to do so, in the situation of affairs. If it does so, this court would, of course, respect its action. If, on the contrary, that court does not find itself compelled to grant the license, this court may order a sale, and marshal and distribute the proceeds, or it may take such action as the equities require, and it finds expedient.

A supplemental bill has been tendered for filing, praying for partition, or sale if that is necessary. This seems to be a proper practice in such circumstances. Story, Eq. Pl. §§ 328, 336. I think leave should be given to file it; and thereupon the question is whether this receivership should be continued, now that these parties are entitled to possession as tenants in common, and upon a bill for partition. The tenants in common disagree, and there is no prospect that they can act harmoniously in the management of the property. It is likely to be a wrangle, if attempted. The defendants, Mrs. Tompkins and her husband, assert her right to be let into the receipt and disposition of the rents as executrix, and, indeed, that is the avowed object of the present motion. That would exclude the complainant from his rights as effectually as he has hitherto—if the allegations of his bill be true—been excluded from all enjoyment of the estate. In these circumstances, it is the duty of the court to appoint a receiver. *Duncan* v. *Campau*, 15 Mich. 415; *Pignolet* v. *Bushe*, 28 How. Pr. 9; *Sandford* v. *Ballard*, 33 Beav. 401. Having already appointed a competent man for the purpose of collecting the rents, etc., to the beginning of 1890, his receivership may continue. An order may be entered granting leave to file the supplemental bill, continuing the receivership, and authorizing the receiver to collect the rents accruing since December last, and denying the motion to discharge.