UNDERGROUND ELECTRIC RYS. CO. OF LONDON, Limited, v. OWS-
LEY et al.

(Circuit Court of Appeals, Second Circuit.   August 17, 1909.)

No. 294.

1. COURTS (§ 262*)—EQUITY JURISDICTION OF FEDERAL COURT—APPOINTMENT
OF RECEIVER FOR ESTATE OF DECEDENT.
   A Circuit Court of the United States as a court of equity has no juris-
diction of a purely probate proceeding, which is not a matter of equity
cognizance, nor has it power to undertake the general administration of
the estate of a deceased person, but it may, as a court of equity, having
the full jurisdiction of the English Courts of Chancery as they existed
at the time of the adoption of the Constitution, in a suit where it has ju-
risdiction of the parties, appoint a receiver of an estate pending the pro-
bate of a will, in the absence of the appointment of a custodian by the
probate court, and this although proceedings for the probate of the will
and the appointment of an executor are pending in such court which have
been delayed by reason of litigation between parties in interest.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 798; Dec. Dig. §
262.*]

2. EXECUTORS AND ADMINISTRATORS (§ 431*)—ACTION BY CREDITORS—RIGHT
OF ACTION TO PROTECT ESTATE.
   A creditor of the estate of a decedent whose claim has been allowed
by the court of principal administration and is not disputed is not re-
quired to be a judgment creditor to entitle him to maintain a suit in eq-
uity for the preservation and protection of property of the estate in an-
other jurisdiction.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. § 1679; Dec. Dig. § 431.*]

3. COURTS (§§ 262, 490*)—EQUITY JURISDICTION OF FEDERAL COURTS—AP-
POINTMENT OF RECEIVER FOR ESTATE—COMITY BETWEEN STATE AND FED-
ERAL COURTS.
   The will of a testator was probated in Chicago as his place of domicile
and a general executor appointed. Decedent owned property in New York
City of the value of perhaps $3,000,000, including a valuable residence,
and art collection, but the executor took no steps for ancillary adminis-
tration there for three years, and in the meantime the property there
was in possession of the widow, who asserted an adverse claim to a large
part of it. The art collection was given no care, and taxes amounting to
$200,000, were unpaid, and a mortgage on a part of the real estate was
being foreclosed for nonpayment of interest. When the executor ap-
plied for appointment as ancillary administrator, his application was con-
tested by the widow, who procured an injunction in Chicago restraining
him from proceeding therewith. The estate was largely indebted, and
a foreign creditor whose claim for a large amount had been allowed filed
a bill in equity in the federal court in New York on behalf of itself and
all other creditors, praying the appointment of a receiver, that the court
administer the property there, and for general relief. Held that, while
the court was without jurisdiction to grant all the relief prayed for, it
had and properly exercised jurisdiction to take charge of and preserve
the property by its receiver, but that the receivership should be provi-
sional until an application to the Surrogate's Court for the appointment
of a temporary administrator under Code Civ. Proc. N. Y. § 2670, could
be made and determined, and be continued only in case such appointment
was refused.
   [Ed. Note.—For other cases, see Courts, Dec. Dig. §§ 262, 490.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** Receivers (§ 27*)—Grounds for Appointment—Preserving Property of Estate.

The fact that a part of the property was in the possession of the widow under an adverse claim thereto was not ground for denying a receiver.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 27.*]

Coxe, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Underground Electric Railways Company of London, Limited, against Louis F. Owsley, executor, and others. From an order appointing a receiver, Mary Adelaide Yerkes, defendant, appeals. Affirmed.

For opinion below, see 169 Fed. 671.

Appeal from orders of the Circuit Court, Southern District of New York, appointing a receiver of the property situated within said district of Charles T. Yerkes, late of Chicago, Ill., deceased.

The following is a summary of the facts in the case:

On December 29, 1905, said Charles T. Yerkes died leaving surviving him the defendant Mary Adelaide Yerkes, his widow, and the defendants Charles E. Yerkes and Bessie L. Rondinella, his only children and heirs at law, and a will which on March 15, 1906, was admitted to probate by the probate court for Cook county, Ill. Letters testamentary were issued to the defendant Owsley only; the other persons named in the will as executors having declined to serve. Notice was given requiring the creditors of the decedent to present their claims to said probate court. Claims amounting to upwards of $3,000,000 were duly presented and were allowed by said court. Among them was the claim of the complainant, a British corporation, for $796,619.01 for unpaid calls upon 32,000 shares of its capital stock subscribed for by the defendant. Other claims were presented which have not yet been allowed.

The will of the decedent has never been admitted to probate in the state of New York nor have ancillary letters testamentary ever been granted in said state. On January 18, 1909, however, a petition for such letters was filed in the Surrogate's Court of the county of New York by the defendant Owsley, and those proceedings are now pending in that court, objections having been filed by the defendant Mary Adelaide Yerkes. It does not appear that the complainant or any other creditor or person interested in said estate has ever applied under the New York statute for the appointment of a temporary administrator by reason of the delay in the ancillary proceedings. Soon after the filing of the application for ancillary letters, the defendant Mary Adelaide Yerkes petitioned the Illinois probate court to remove the defendant Owsley from his position as executor for misconduct. This petition was denied and an appeal from the order of denial is now pending.

Shortly after this action of the probate court the defendant Mary Adelaide Yerkes brought a suit in equity in the superior court for said Cook county, Ill., against the defendant Owsley, praying that he be enjoined from further acting as executor and that a receiver of the estate be appointed. A temporary injunction was thereupon issued restraining the defendant Owsley from prosecuting his application for ancillary letters testamentary in the New York Surrogate's Court. The defendant Owsley moved to dissolve this injunction, but no decision thereon has yet been rendered. The parties to said suit have, however, entered into a stipulation that further proceedings in the Surrogate's Court shall be postponed until after the disposition of said motion.

The property of the estate of said Charles T. Yerkes in the city of New York, other than securities pledged as collateral, consists of:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(1) The valuable residence and picture gallery known as No. 864 Fifth avenue and comprising several parcels of land.

(2) A stable on East Sixty-Ninth street.

(3) An art collection in said residence consisting of pictures, statuary, tapestries, and other works of art.

This property is estimated to be worth over $2,000,000.

The assets of the Yerkes estate outside the state of New York consist principally of street railway securities of large face value, but of problematical market value. The indebtedness of the estate is very large. It is not contended that the estate is insolvent, but it is claimed that it will be necessary to use the proceeds of the New York real estate to pay the debts. Prior to the institution of these proceedings no person representing the estate was in charge of the New York property. It was not insured. Taxes aggregating $200,000 had remained unpaid. A part of the real estate was subject to a mortgage which was in process of foreclosure. The art collection—according to the testimony of the complainant's expert witness—was neglected and deteriorating. The defendant Mary Adelaide Yerkes was provided for in the will of her husband, but elected to renounce her rights under it and to accept her widow's portion under the Illinois law—one-third of the personalty and dower in the real estate. After her husband's death she continued to live as before in the Fifth avenue residence, and has remained there ever since. An affidavit filed in her behalf in these proceedings states that she occupies the premises under a claim of right. The foundation of such claim is not stated.

Counsel, by way of explanation, assert in their brief that title to the most valuable part of the real estate was in Mrs. Yerkes' name for several months prior to February, 1893, when she deeded it to a third person, who immediately reconveyed to Mr. Yerkes. The contention seems to be that this deed was invalid for want of delivery. It is also stated that in 1893 Mrs. Yerkes executed another deed conveying this same property as well as a rear lot and the stable to another person, who also reconveyed to Mr. Yerkes. The contention with respect to this deed seems to be that it was without consideration and was obtained by false representations. One parcel of the real estate —that subject to the mortgage—was never in Mrs. Yerkes' name.

With respect to the art collection and other personal property, it is asserted that Mrs. Yerkes is the owner thereof by virtue of certain bills of sale executed in 1884 and 1887 relating to the contents of a certain house in Chicago and a bill of sale dated in 1896 covering the then contents of the Fifth avenue residence. On April 5, 1909, the complainant filed its bill of complaint, stating many of the facts already mentioned and others, and in effect praying for the administration of the estate of the decedent situated in the state of New York, the appointment of a receiver, and other relief.

On the same day a temporary receiver was appointed, and an order to show cause why the receivership should not be continued issued. Thereafter the parties defendant appeared, but only the defendant Mary Adelaide Yerkes appeared in opposition. Affidavits were filed in behalf of the complaint and of said defendant, and on April 28, 1909, an order was entered continuing the receivership. These two receivership orders are the subjects of this appeal.

James Russell Soley and Wm. B. Hornblower, for appellant Yerkes.
Paul D. Cravath, for appellee Railways Co.
W. O. Underwood, for appellee executor.

Before COXE and NOYES, Circuit Judges, and HOUGH, District Judge.

NOYES, Circuit Judge (after stating the facts as above). The question upon the surface of this case is whether the receivership orders were proper. The question underlying is whether the Circuit Court had power to make them. The latter is a jurisdictional question, and is duly raised upon the record. Under a recent decision of

the Supreme Court it is our duty to decide it. Boston, etc., R. Co. v. Gokey, 210 U. S. 155, 28 Sup. Ct. 657, 52 L. Ed. 1002.

The question of jurisdiction should first be considered. And this question in its essence is not whether the Circuit Court had power to grant all the relief prayed for, but whether it had power to afford any such relief. If the orders appealed from were within its jurisdiction and were proper, they must stand even if the court had no power to grant the other measures of relief sought. Strictly speaking, if the appointment of the receiver was within the jurisdiction of the court, it is not material just here whether it had power to proceed with the general administration of the estate. And yet the broad jurisdictional question has been fully presented. The determination of the basis of the power to appoint receivers, as well as its existence, may settle something in this intricate litigation. While, therefore, the result in either case will be the same, we think it of importance to ascertain—at the commencement of our examination—whether such power, if it exists, is to be found as a part of the general power of the Circuit Court to administer the estates of deceased persons or as a particular power for the protection of property pending litigation.

The inquiry is, then, whether the Circuit Courts of the United States, as courts of equity, have jurisdiction to administer the estates of decedents. The appellant contends that no such power exists, and lays especial stress upon the fact that the inquiry relates to federal courts. But this is not the fundamental objection. If the Circuit Courts are without power to entertain probate proceedings, it is not primarily because they are courts of the United States, but because the subject does not belong to general equity jurisdiction. No limitations attach to the purely equitable relief which these courts can grant when they have jurisdiction of the parties. They have the full equity jurisdiction formerly exercised by the English Courts of Chancery, and are not limited by the chancery system adopted by any state.

Now, as long ago as 1727 it was settled in England that a court of equity could not entertain jurisdiction of a bill to set aside a will or the probate thereof. So in the case of Broderick's Will, 21 Wall. 503, 509, 22 L. Ed. 599, Mr. Justice Bradley said in a suit of that nature:

"As to the first point, it is undoubtedly the general rule, established both in England and this country, that a court of equity will not entertain jurisdiction of a bill to set aside a will or the probate thereof. The case of Kerrick v. Bransby (decided by the House of Lords in 1727) 7 Brown's Parl. Cas. 737, is considered as having definitely settled the question. Whatever may have been the original ground of this rule (perhaps something in the peculiar constitution of the English courts), the most satisfactory ground for its continued prevalence is that the Constitution of a succession to a deceased person's estate partakes in some degree of the nature of a proceeding in rem, in which all persons in the world who have any interest are deemed parties, and are concluded as upon res judicata by the decision of the court having jurisdiction."

Similarly, in Ellis v. Davis, 109 U. S. 485, 494, 3 Sup. Ct. 327, 332, 27 L. Ed. 1006, which was a suit brought in the Circuit Court to set aside a will and annul probate, Mr. Justice Matthews, following Broderick's Will, supra, and denying the power of the court to grant the relief sought, said:

"It is well settled that no such jurisdiction belongs to the Circuit Courts of the United States as courts of equity, for courts of equity, as such, by virtue of their general authority to enforce equitable rights and remedies, do not administer relief in such cases."

In Farrell v. O'Brien, 199 U. S. 89, 116, 25 Sup. Ct. 727, 736, 50 L. Ed. 101, it was said that:

"The Circuit Courts of the United States had no jurisdiction to admit a will to probate or to entertain a pure probate proceeding."

See, also, Garzot v. De Rubio, 209 U. S. 283, 28 Sup. Ct. 548, 52 L. Ed. 794. And in the very recent case of Goodrich v. Ferris (decided by the Supreme Court May 17, 1909) 214 U. S. 80, 29 Sup. Ct. 583, 53 L. Ed. 914, Mr. Justice White said:

"A case involving the devolution and administration of the estate of a decedent (is) a subject peculiarly within state control."

The principles underlying these decisions have a two-fold basis. In the first place, courts of equity cannot act in probate proceedings because the subject is statutory. In this country the laws of the several states determine the succession to the property of deceased persons intestate and provide for the probate and establishment of wills. Statutes confer upon various tribunals jurisdiction over probate proceedings. The courts in exercising the powers conferred exercise statutory, and not equitable, powers. In the second place, courts of equity will not entertain jurisdiction over probate proceedings because they are in the nature of proceedings in rem. In the case last referred to (Goodrich v. Ferris), the Supreme Court also said:

"It is elementary that a probate proceeding by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in the nature of proceedings in rem, and is therefore one as to which all the world is charged with notice."

It may be regarded then as settled that the Circuit Courts, because they are courts of equity and because the subject is not one of equity cognizance, have no jurisdiction of purely probate proceedings, such as relate to the probate of wills and distribution of estates. But this does not carry us far enough. While much of the relief which the bill of complaint asks for could only be granted in a strictly probate proceeding, it goes further. It prays the court (1) to appoint a receiver; (2) to sell the property of the decedent; (3) to ascertain and determine the indebtedness of the estate; (4) to set apart the widow's dower right; and (5) to distribute the estate. Taking the bill as a whole, it must be regarded as asking the Circuit Court to undertake the general administration of the estate—to do something more than act in a purely probate proceeding.

The distinction between a strictly probate proceeding and one involving the general administration of an estate is pointed out in Martin v. Ellerbe's Adm'r, 70 Ala. 339:

"The term 'administration,' in this respect, is of comprehensive meaning. It includes more than the mere collection of the assets, the payment of debts and legacies, and distribution to the next of kin. It involves all which may be done rightfully in the preservation of the assets, and all which may be done legally by the administrator in his dealings with creditors, distributees or legatees, or which may be done by them in securing their rights; and it

includes all which may be done, and rightfully done, in relation to adverse claims to assets, which have come to the possession of the administrator as the property of the testator or intestate."

Now, it is obvious that the general administration of an estate, including the ascertainment and determination of the rights of creditors, distributees, and legatees, and the preservation of the assets, must almost necessarily involve the determination of controversies between citizens of the same state. It is absolutely certain that the present estate could not be settled in the manner prayed for in the bill without many such controversies arising. And this brings us to an objection peculiarly applicable to the federal courts on account of the limitation of their jurisdiction to controversies between citizens of different states. A Circuit Court undertaking the general administration of an estate and only passing upon controversies between citizens of different states could not ordinarily go far.

These objections to action by a federal court looking to the administration of an estate are pointed out in Byers v. McAuley, 149 U. S. 608, 612, 13 Sup. Ct. 906, 907, 37 L. Ed. 867. In that case an administrator with the will annexed appointed by a probate court had settled the estate and had presented his account for allowance. Suit was then brought in the United States Circuit Court by the heirs to annul the will and the probate thereof, to enjoin the administrator from further proceeding, and to obtain distribution. The Circuit Court practically assumed the general administration of the estate. Mr. Justice Brewer in delivering the opinion of the Supreme Court said:

"It is obvious from the decree which was entered that the Circuit Court of the United States assumed full control of the administration of the estate. That decree disposed of and distributed the entire estate among all the persons interested therein, citizens and noncitizens of the state. It did not stop with an adjudication of the claims of citizens of other states against the estate, but assumed to determine controversies between citizens of the same state, for the two corporations named in the first paragraph were both citizens of Pennsylvania, and yet the decree determined their rights as against the estate, as well as between themselves. * * *

"Indeed, the decree as a whole cannot be sustained, unless upon the theory that the federal court had the power on the filing of this bill to take bodily the administration of the estate out of the hands of the state court and transfer it to its own forum. * * * (Pages 619, 620, of 149 U. S., and page 910 of 13 Sup. Ct. [37 L. Ed. 867.])

"If original jurisdiction of the administration of the estates of deceased persons were in the federal court, it might by instituting such an administration and taking possession of the estate, through an administrator appointed by it, draw to itself all controversies affecting that estate, irrespective of the citizenship of the respective parties. But it has no original jurisdiction in respect to the administration of a deceased person. * * *

"Our conclusion, therefore, is that the federal court erred in taking any action or making any decree looking to the mere administration of the estate, or in attempting to adjudicate the rights of citizens of the state as between themselves."

It is urged, however, in behalf of the appellee that, while the Circuit Courts may have no jurisdiction over purely probate proceedings or over original proceedings for the administration of an estate, they have power to grant relief in cases relating to the administration of estates where maladministration or nonadministration is shown. And it is contended that the present case is one of nonadministration, where-

in the Circuit Court has power to marshal the assets, apply them to the payment of debts, and, having assumed jurisdiction for such purposes, go further and fully administer the property coming into its custody.

In our opinion, however, the cases referred to by the appellee do not support the proposition advanced. The distinction sought to be drawn seems in conflict with the principles laid down by the Supreme Court in Byers v. McAuley, supra. Even in the case of maladministration or nonadministration, we think the Circuit Courts of the United States have no power to undertake the general administration and distribution of the estates of deceased persons.

But it does not follow that the federal courts, as courts of equity, have no power to grant some measure of relief to persons whose interests are injuriously affected by the maladministration or nonadministration of estates. Relief in such cases has been repeatedly granted. Thus a bill in the United States Circuit Court by a next kin to recover a distributive share in an estate and charging fraud upon the part of the administrator has been sustained. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260. A judgment creditor has been permitted to maintain a suit in a federal court to enforce payment of his judgment against the estate of the judgment debtor. Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342, 30 L. Ed. 532. See, also, Rio Grande R. Co. v. Gomila, 132 U. S. 478, 10 Sup. Ct. 155, 33 L. Ed. 400. Similarly a creditor has been allowed to sue in the Circuit Court to set aside an alleged fraudulent conveyance made by a decedent. Hale v. Tyler (C. C.) 115 Fed. 833. So a suit by a legatee to enforce certain annuities against the estate of a decedent has been sustained. Comstock v. Herron, 55 Fed. 803, 5 C. C. A. 266; Herron v. Comstock, 139 Fed. 370, 71 C. C. A. 466. A receiver of the real estate of a decedent has been appointed at the suit of a distributee alleging mismanagement by the executors, nonpayment of interest and taxes, etc. Ball v. Tompkins (C. C.) 41 Fed. 486.

Where the line is to be drawn between cases in which the courts will and will not afford relief is not clear, neither are the grounds upon which the courts will act entirely free from obscurity. Probably the doctrine that a constructive trust exists in executors and administrators will be found to have afforded the basis of equitable jurisdiction in a majority of cases. So the inadequacy of the law to afford relief and the necessity for the protection of the property of estates has often lead to the intervention of courts of equity.

We expressly refrain from expressing an opinion as to how far a federal court may go in granting relief in case of the nonadministration of estates. We especially reserve the question, appertaining to the present suit, whether in case probate proceedings in the courts of New York with respect to the assets within that state should be permanently prevented, the Circuit Court would have power to marshal the assets and provide for the payment of the complainant's demand. We confine ourselves in the further examination of the jurisdictional question in this case to the inquiry whether the Circuit Court had power to make the particular orders appealed from.

Now, as already noted, the necessity for the protection of property of estates is a ground for the intervention of courts of equity. In-

deed, the protection of the fund in litigation before them has always been peculiarly within their province. Whether they can go so far as to protect the property of estates pending litigation in other courts must now be considered.

In England, before the passage of the act of Parliament authorizing ecclesiastical courts to appoint an administrator of an estate pending litigation concerning the probate of a will, the Court of Chancery often appointed receivers to take charge of the estate until the ecclesiastical court should determine the rights of the parties. And even after the passage of the act the Court of Chancery exercised such power when the ecclesiastical court failed for any reason to appoint an administrator. Alderson on Receivers, p. 95, § 63. See, also, Williams on Executors (7th Ed.) 563.

Lord Eldon in the case of King v. King, 6 Ves. 172, stated the reason for the practice:

"This is almost a motion of course. There is no doubt this court has appointed a receiver when it was in dispute who was the personal representative; when the matter is in controversy in the spiritual court as to whether there is an intestacy or not. The court goes upon this: That it will do its best to collect the effects. The property is in danger in this sense: That it may get into the hands of persons who have nothing to do with it."

See, also, Atkinson v. Henshaw, 2 Ves. & Bea. 84; Rendall v. Rendall, 1 Hare, 152; Marr v. Littlewood, 2 Myl. & Cr. 455; Ball v. Oliver, 2 Ves. & Bea. 96; Watkins v. Brent, 1 Myl. & Cr. 97.

Under the present English judicature act, the Probate Division of the High Court of Justice has power to appoint receivers and administrators pendente lite. Consequently the modern English practice is to leave such appointments to the Probate Division, although the Chancery Division will still appoint receivers when necessary for the preservation of an estate when the Probate Division has not first acted by appointing an administrator. See Veret v. Duprez, L. R. 6 Ed. 329. The English practice with respect to the appointment of receivers for estates has been followed in this country.

In 4 Pomeroy's Equity Jurisprudence, § 1332, it is said:

"During the litigation concerning the admission of a will to probate and during the interval before an executor or administrator is appointed, a court of equity has power to appoint a receiver of the personal property and of the rents and profits of the real estate, when there is any danger of their loss, misuse, or misapplication. The necessity of such a receiver has been greatly lessened by modern statutes authorizing the probate courts to appoint an administrator ad litem and enlarging his powers."

In Redfield on Wills, p. 96, it is stated:

"Where the property belonging to the estate is in peril of loss, and there is no one appointed to represent the estate, the right of administration being in controversy and the probate court not having appointed an administrator pendente lite, a court of equity will appoint a receiver to arrest or prevent inevitable loss where the estate is of sufficient value and the amount of apprehended loss such as to justify the expense of a receiver."

And in the very recent case of McCarter, Atty. Gen., v. Clavin (1907) 72 N. J. Eq. 642, 66 Atl. 599, the court used language most applicable in this case:

176 F.—3

"In the present instance there is a controversy over the admission of the alleged will to probate. There is a contest over the question whether the party claiming to be the only heir is such. The property is in great danger of loss owing to tax sales and threatened foreclosure. It is clear that, in the absence of an heir, in the absence of an executor or of any lawful appointee entitled to hold the property together, it will be lost, and in any event the rents and profits will be misapplied. It appears to me that, if there ever was a case in which the rule I have referred to ought to be applied, it is in this case, otherwise a vast amount of property that may belong to the state will, for want of protection, be swept away, and pass, without practical consideration, into the hands of strangers to the decedents."

See, also, Ball v. Tompkins (C. C.) 41 Fed. 486; Robinson v. Taylor (C. C.) 42 Fed. 803; Flagler v. Blunt, 32 N. J. Eq. 518; Estate of Colvin, 3 Md. Ch. 278; Buskirk v. Peck, 57 W. Va. 360, 50 S. E. 432.

The Circuit Courts of the United States, sitting in equity, have the full jurisdiction of the English Courts of Chancery as they existed at the time of the adoption of the Constitution of the United States, and we are satisfied, upon the authority cited, that in a suit where they have jurisdiction of the parties they have power to appoint a receiver of an estate pending the probate of a will in the absence of the appointment of a custodian by the probate court.

The appellant urges numerous objections to the existence of any such power. She says, in the first place, that the Circuit Court has no power to entertain a bill for the appointment of a receiver and nothing besides—that the suit regarded merely as a suit for a receiver cannot stand. There is force in this contention. The appointment of a receiver is not the ultimate end and object of litigation, but is a provisional remedy or auxiliary proceeding. Alderson on Receivers, p. 15, citing State ex rel. Merriam v. Ross, 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534. Still we think that this merely means that there must be litigation in some court to which the receivership is auxiliary, and does not necessarily require that it should be in the court of equity itself. In all the English and American cases referred to the probate proceedings to which the receiverships were incident were in a court distinct from the court of equity. Bills merely for the preservation of property pending litigation have repeatedly been sustained. In Williams on Executors (7th Ed.) p. 563, it is said:

"During a litigation in the ecclesiastical court for probate or administration, a court of equity would entertain a bill for the mere preservation of the property of the deceased till the litigation was determined and appoint a receiver, although the court of probate, by granting an administration pendente lite, might provide for the collection of the effects."

It is true that in a suit merely for the appointment of a receiver the making of the appointment practically disposes of the matter in controversy. There is nothing more to be done except to surrender the property at the termination of the litigation to which the receivership is auxiliary. Anderson v. Guichard, 9 Hare, 275. See, also, Lewis v. Campau, 14 Mich. 458, 90 Am. Dec. 245. But this result while somewhat extraordinary constitutes no reason for denying the existence of a power so firmly established by the authorities. Of course, the defendant is correct in the proposition that a court cannot create

a receivership in a suit of which it has no jurisdiction. But this begs the question. In this case the court did have jurisdiction of the suit regarded merely as a suit for the preservation of imperiled property.

Again, it is urged that the suit considered merely as a suit for a receiver is not a controversy over which the Circuit Court can exercise jurisdiction, but is a proceeding purely in rem. We think this contention not well founded. A proceeding in rem strictly speaking is one in which the property itself is the defendant. But this suit, while having for its object the preservation of the property, is against the persons claiming interests in it. The complainant suing in its own behalf and the behalf of other creditors alleges that the property is being neglected by the defendants—the executor, the widow, and the heirs at law. The suit is a controversy inter partes affecting property. It can no more be regarded as a proceeding in rem than could a suit for an injunction to restrain waste. Moreover, if the suit be regarded as a proceeding in rem—using that term in a broader sense—it does not follow that the Circuit Court is without jurisdiction of it. In Pennoyer v. Neff, 95 U. S. 731, 21 L. Ed. 565, the Supreme Court said:

"It is true that in a strict sense a proceeding in rem is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but in a larger and more general sense the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage or enforce a lien. So far as they affect property in the state, they are substantially proceedings in rem in the broadest sense which we have mentioned."

Suits of this nature while in a sense in rem are nevertheless controversies. Furthermore, while proceedings in rem are not a part of the general equity jurisdiction of any court—English or American—we have already seen repeated instances where courts of equity have entertained jurisdiction to appoint receivers to preserve estates, pending the appointment of a representative.

Again, it is urged that the English cases and those from the different states where receivers of estates have been appointed do not constitute authority for action by the United States courts because in those cases the equity courts and the probate courts were acting under the same sovereign. The equity courts, however, acted under general equity powers which the federal courts possess to the fullest extent. A state court as a court of equity has no greater power to appoint a receiver to hold property pending the appointment of a representative therefor than has the Circuit Court as a court of equity.

It is further contended that the jurisdiction of the Circuit Court to appoint a receiver is excluded by the fact that the Surrogate's Court has already taken jurisdiction. As shown in the statement of facts, the defendant Owsley, as executor, has applied to that court to establish the will and for ancillary letters testamentary. And it is urged that the principle is applicable that the possession of the res vests the court which first acquires jurisdiction with power to determine all controversies concerning it, and disables other courts of co-ordinate

jurisdiction from exercising a like power. Farmers' Loan, etc., Co. v. Lake Street R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. But we are of the opinion that the principle does not apply here. This is not a question of conflicting jurisdictions. The Circuit Court in appointing a receiver has not attempted to interfere with the exercise by the Surrogate's Court of its full power to grant ancillary letters testamentary. The receivership is rather in aid of, instead of in conflict with, the jurisdiction of that court. It is unnecessary, therefore, for us to determine whether, when this suit was commenced, the proceedings in the Surrogate's Court had gone so far as to amount to an assumption of exclusive jurisdiction over the estate.

Similarly the jurisdiction of the Circuit Court to appoint a receiver is not excluded by the fact that a receivership bill has been filed in an Illinois court of equity. That court had nothing to do with the assets of the estate in the state of New York.

The contention that the complainant has no standing to bring this suit because it is not a judgment creditor is in our opinion without foundation. We are by no means satisfied that a creditor of the estate of a deceased person is obliged to obtain a judgment before he can resort to equity for the protection of the assets of such estate. Moreover, the claim of the complainant has been duly allowed by the court of principal administration and this allowance practically amounts to a judgment. Furthermore, it does not appear that any one disputes the validity of the claim.

Lastly, the contention is not well founded that the suit cannot be maintained because the Illinois executor, Owsley, has been made a party. He does not raise the question. It does not affect the jurisdiction of the suit. It cannot be properly determined upon this appeal from the receivership orders.

We thus reach the conclusion that, as the bill prayed for the appointment of a receiver and for general relief, the Circuit Court had jurisdiction of the suit, although some of the prayers were for relief beyond its power to grant, and that it acted within its power in appointing a receiver.

But it does not follow from the existence of the power that it was properly exercised in the present case. The appointment of a receiver is a drastic remedy. The facts presented should clearly show its necessity before such an appointment should be made. What are the merits here?

The slightest examination of the facts discloses a most extraordinary situation. For nearly four years this estate in New York, worth millions of dollars, has received no attention from its proper representatives. Taxes have been unpaid. The art collection has received only the attention which an adverse claimant chose to give it. Interest upon mortgages has been defaulted, and the equity in valuable real estate is being lost through foreclosure. The estate has been permitted to go adrift. Its very situation has been an invitation to persons to set up claims to it. Rightfully or wrongfully, this invitation has not been declined. The widow remaining the statutory period remained longer, and now claims practically everything.

The executor who accepted the trust and whose primary duty was

to secure and preserve the estate and pay its debts has done absolutely nothing in this jurisdiction. He even waited three years before seeking to establish the will here. That this may have been by the advice of counsel does not alter that fact. And when he finally attempted to perform his duty the widow promptly sued out an injunction in Chicago to restrain further proceedings. Thereupon the widow and the executor stipulated that nothing should be done with the New York proceedings until the decision in the Chicago suit. And so matters stand.

While this litigation between the widow and the executor goes on it would seem that the creditors were supposed to stand idly by and do nothing. As widow the defendant Mary Adelaide Yerkes prevents the probate of the will in this jurisdiction and the grant of ancillary administration. As adverse claimant she retains and uses the property here.

But the creditors are not remediless. A dead man's estate is primarily a fund with which to pay his debts. The complainant and other creditors of this state have the right in some way to look to these New York assets to pay their demands. They have the right to insist that these assets be protected and safeguarded. They have the right to protection by a court from the consequences of the failure of the proper representatives to act. If there ever was a case in which the facts called for the appointment of some proper custodian of the property of an estate, this is one.

Were it not for one consideration, it would necessarily follow that the proper custodian of the estate should be the receiver appointed by the Circuit Court. This consideration is the New York statute providing for the appointment of a temporary administrator. While, as we have seen, the power to appoint a receiver of the estate of a deceased person undoubtedly exists in the Circuit Court, it is nevertheless an extraordinary power and one seldom exercised by courts of equity at the present time. Its purpose is to protect property when there is no one in a position to look out for it. Its object is to supplement the powers of, but not to supplant, the statutory tribunals for administering estates. It should in our opinion only be exercised when the state statutes fail to provide for the appointment of a temporary custodian of an estate in case of delay in appointing a permanent representative. Every consideration renders it desirable that the probate court, which alone can appoint the latter should appoint the former. So far as possible probate proceedings—principal and auxiliary—should be under the control of one court.

Now, section 2670 of the New York Code of Civil Procedure provides that:

"On the application of a creditor or a person interested in the estate, the Surrogate may in his discretion, issue to one or more persons, competent and qualified to serve as executors, letters of temporary administration, in either of the following cases:

"(1) When, for any cause, delay necessarily occurs in the granting of letters testamentary or letters of administration, or in probating a will."

The powers of a temporary administrator are set forth in section 2672. Section 2675 prescribes his rights and duties with respect to

real estate. In our opinion the appointment of a temporary administrator under this statute would adequately protect the interests of the complainant and other creditors.

It is urged, however, by the complainant that it is not the practice of the Surrogate's Court in New York county to entertain an application, by a creditor for a temporary administration of the estate of a nonresident when an application for ancillary letters is pending. It is said that the "letters testamentary" the delay in granting which justifies the appointment of a temporary administrator refer to the letters granted upon an original—and not an ancillary—probate of a will.

On the other hand, it is said that while it is true that a distinction is made in the decisions between the phrases "administration in chief" and "temporary administration," yet the former phrase applies as well to the grant of ancillary letters upon the estate of a nonresident as to the grant of original letters upon the estate of a resident—that the proper distinction is between permanent administration, whether original or ancillary, and temporary administration. And it is urged that the statute would largely fail in its purpose if it provided no protection in a case where a nonresident decedent left the great bulk of his property in New York.

It is not within our province now to construe or interpret this state statute. Upon its face it would seem to apply in a case like the present. Whether it does or does not apply must be determined by the state courts. And we are unwilling that the present receivership should stand other than as a mere provisional receivership unless and until application for a temporary administrator shall have been made under such state statute and such application shall have been denied. To that extent at least the receivership should be continued. Otherwise the estate would be permitted to again go adrift pending the application to the Surrogate's Court. And if the Surrogate's Court declines to act the receivership orders should then stand as fully affirmed.

But finally it is urged against any receivership that Mrs. Yerkes is in possession of the property under a "claim of right." This fact—if it be one—instead of constituting an objection to the appointment of a receiver, is a cogent reason why one should be appointed. Lord Eldon well said that a receiver should be appointed to prevent the property of the estate falling into the hands of persons without right to it. This may or may not have already happened in this case. A receiver should be appointed to see whether it has happened. If it be ascertained that the widow is actually in possession under a claim of right, the court will consider such fact in determining what, if any, steps should be taken to secure possession of the property. But every colorable claim is not a claim of right, and it is not clear from anything in this record just what the right of this claimant is founded upon. It should be investigated in order to determine the proper action to take. A receivership does not change title. It does not necessarily change possession. Indeed, it does not follow that, if a receiver should obtain the physical custody of the property in dispute, the claimant's ultimate right of possession would be affected. But we do not desire to pursue the inquiry further. It is sufficient now to say that the existence of Mrs. Yerkes' claim to most of the property is no objection to the ap-

pointment of a receiver. The proper orders to be made should a receiver be appointed must be the subject of future consideration. Moreover, it must be observed that Mrs. Yerkes does not claim all New York assets. We do not understand that she asserts any claim to the real estate which is being foreclosed, and it is difficult to perceive any basis for the claim to personal property acquired subsequently to her last alleged bill of sale. The existence of these items of property alone would justify the appointment of a receiver.

The following conclusions are, therefore, reached:

(1) The orders appealed from should be affirmed and the receivership therein provided for continued for such time as in the judgment of the Circuit Court shall be reasonably necessary to enable the complainant to apply to the Surrogate's Court for the appointment of a temporary administrator under the statute referred to and to obtain the action of said court thereon. The application should be filed not later than the first Monday of October, 1909, and should be pressed to a conclusion as expeditiously as possible.

(2) Unless at the expiration of such time it is shown to the Circuit Court that said application has been in good faith prosecuted and has resulted in a decision of the Surrogate's Court declining to appoint a temporary administrator, the receivership should be terminated and the bill of complaint dismissed; but, if such action by the Surrogate's Court is shown, the receivership should be continued until the grant of ancillary administration when the receiver should turn over the property to the representative of the estate.

(3) The question should be reserved as to how far the Circuit Court could go in protecting and securing the rights of the complainant should the receivership be continued and ancillary proceedings in New York be permanently stayed by the Illinois court. Especially should the question be reserved whether, in this contingency, the right of creditors created by the New York statutes to look to the real estate in case of deficiency in the personalty could be enforced through the federal courts.

The orders of the Circuit Court appealed from are affirmed without costs under the conditions stated in this opinion.

COXE, Circuit Judge (dissenting). I am unable to concur in the opinion of the majority of the court.

The following propositions must, I think, be regarded as established:

First. The probate court of Illinois has already taken jurisdiction, appointed an executor and allowed the claim of the complainant.

Second. In January of the present year the executor filed a petition for ancillary letters in the Surrogate's Court of New York, which is still pending undecided.

Third. Less than three months after this application to the Surrogate's Court the present action was commenced, April 8, 1909.

Fourth. Proceedings are now pending, therefore, in the state courts of Illinois and New York in which every possible question presented by the present bill can be determined. That these courts have jurisdiction and should ultimately decide this controversy, no one disputes.

Fifth. By express provision of law the Surrogates' Courts of New York may, on the application of a creditor, issue letters of temporary administration when, for any cause, delay occurs in granting letters testamentary. This court is unanimous in thinking that "the appointment of a temporary administrator under this statute would adequately protect the interest of the complainant and other creditors."

No application for such protection has been made.

Sixth. The Circuit Courts of the United States have no jurisdiction in purely probate proceedings.

Seventh. No decree of distribution can be granted by the Circuit Court; and if no answer be filed and a decree be taken by default it must be to the effect that the receiver continue to hold the property indefinitely until another court, having jurisdiction of the entire controversy, sees fit to administer it. Such a degree is an anomaly. A court which cannot dispose of property should not be permitted to receive it.

Eighth. It is our duty to assume that the state courts will do their duty, at least until something appears to justify a contrary conclusion. The appointment of this receiver within three months after the petition was filed in the Surrogate's Court and without any application for temporary administration, proceeds upon the theory that the Surrogate's Court will not do its duty:—to my mind a wholly unwarranted assumption.

If I am correct in the foregoing propositions, it follows that in sustaining the action of the Circuit Court in taking jurisdiction and granting a drastic remedy in, to say the least, an exceeding doubtful case, we are setting a dangerous precedent. We have repeatedly held that a preliminary injunction should never issue in such a case and yet we sanction, in limine, the taking of property from the custody of tribunals having full jurisdiction and entirely competent to administer it and thus add to the complications of a sufficiently tangled situation. The question of jurisdiction must be determined as of the time the bill was filed—April 8, 1909. If at that time the court had no jurisdiction the order appointing the receiver should be vacated. If jurisdiction is to be predicated of the failure of the state courts to act, it seems to me manifest that it does not attach until they have been asked to act and have declined to do so. In other words, a premature action cannot be maintained upon the theory that some event may occur in the future which will give it vitality. The opinion of the court directs that a speedy application be made by the complainant to the Surrogate's Court asking for the appointment of a temporary administrator and provides that unless it be shown that, within the time limited, the application has been made and denied, "the receivership should be terminated and the bill dismissed."

I cannot resist the conclusion that this refusal of the state courts to act, concededly necessary to sustain and continue the action, was a condition precedent to the filing of the bill and should have been alleged therein.

If the state courts had declined to administer the estate prior to the filing of the bill, there still would be a grave question as to the juris-

diction of the Circuit Court, but it is sufficient for present purposes to say that, in my judgment, the action was improvidently and prematurely brought.

The orders should be reversed.